WALKER, *Appellant*, v. OWEN.

1. **Practice**: WHAT QUESTIONS MAY BE RAISED ON APPEAL. In an action to recover the contract price of land, no question was made in the trial court as to the plaintiff's title. *Held*, that none could be raised in this court. A case cannot be tried on one theory below and on an entirely different one here.

2. **Statute of Frauds**: RECOVERY OF PURCHASE PRICE: DESTRUCTION OF IMPROVEMENTS. Where a vendee of improved real estate takes possession under a contract for title, pays a small part of the purchase money and keeps possession until the improvements are destroyed by fire, he cannot resist an action for the balance of the purchase money with tender of a deed on the ground that he did not sign the contract.

3. ———: ———: HUSBAND AND WIFE. In such a case the fact that the vendor is a married woman will be no bar to the enforcement of the contract; and this on the ground that though the contract was not originally enforceable against her, yet as she has voluntarily performed her part of it, there is no reason for exonerating the vendee.

4. ———: ———: AFFIRMANCE BY MARRIED WOMAN. Where a woman under coverture at the time of making an agreement with respect to her land afterward becomes discovert and, then affirms the contract by suing on it, she may maintain the action.

*Appeal from Clay Circuit Court.*—Hon. GEORGE W. DUNN, Judge.

REVERSED.

*Henry Smith* and *Hamner & Burris* for appellant.

*Samuel Hardwicke* for respondent.

WINSLOW, C.—This action was originally commenced in the Clay circuit court by Catherine Walker and Joseph Walker, her husband, for the purchase money of lands alleged to have been the fee simple property of the wife. The husband died pending the suit, his death was suggested on the record, and the cause thereafter proceeded in the name of the wife alone. The trial was before the court, both parties having waived a jury, and resulted in a finding and judgment for the defendant, to reverse which the plaintiff brings the case here by appeal.

The record seems perfect. The amended petition, on which the case was tried, states in substance that: "Catherine Walker, wife of Joseph, was the owner and in possession of a certain lot in Gosneyville, in Clay county; that she, by her agent, W. F. Nelson, April 3rd, 1873, contracted in writing to convey the same to defendant on payment of the sum of $200; that by said agent they executed on said day a bond binding themselves to execute and deliver to defendant a warranty deed to said lot; that they tendered such deed to defendant on the 21st day of June, 1873, which he refused to accept; that they cannot make profert of said bond because the same is in possession of defendant; that immediately upon said sale defendant was put in possession of said lot and has occupied, used and enjoyed the same ever since; that by the terms of said bond the purchase money was to become due on the tender of the deed, and that said $200 with interest from the tender of said deed, June 21st, 1875, at six per cent, are yet due plaintiff, for

which she asks judgment. The answer contains a specific denial of all the allegations of the petition, and this additional plea: "Defendant says he did not sign any contract in writing in relation to said land, and said contract is void as to him under the statute of Missouri, and he pleads said statute in bar of this cause."

On the trial plaintiff introduced Wm. F. Nelson, the agent, who testified: "On April 3rd, 1873, as agent for plaintiff, I sold defendant the lot described in the petition for $200, and gave him her title bond duly signed, stipulating that when her deed conveying the lot to him was delivered to him he was to pay therefor the $200. Defendant agreed to pay plaintiff the $200, took the bond and immediately under it received from plaintiff the possession of the lot, which had a storehouse upon it, and then occupied it as a retail store for some months, when the storehouse burned down and defendant told me the bond was burned in it. Defendant did not sign his name to the bond. June 21st, 1873, I received a deed from plaintiff and her then husband, conveying the property to defendant, and offered it to defendant, and he refused to take it, and refused to pay for it because he claimed the acknowledgment was defective, but made no objection to it because it was from plaintiff; afterward I offered him a deed, and again he refused to take it. It is the same deed now tendered in court to defendant. The plaintiff was owner and in possession of the property up to the time she sold it to defendant. Defendant never offered to return the property to plaintiff or to me as agent of plaintiff. Defendant knew that I was acting as her agent as I told him so at the time. Plaintiff bought about a dollar's worth of medicine out of defendant's store, which defendant agreed should be a payment on the lot."

Plaintiff then read in evidence a general warranty deed in the usual form from herself and husband to George W Owen, for the lot in controversy, dated October 2nd, 1876, acknowledged the same day in proper form to convey said lot.

No objections were made to its reception, and it was identified by Nelson as the one he tendered defendant. Plaintiff then read in evidence, without objection, a general warranty deed for the lot in controversy, dated January 13th, 1873, properly acknowledged and in all respects sufficient to vest the title of the grantors in the grantee, executed by W. W. Letton and Rutha I. Letton, his wife, of the county of Clay and State of Missouri, parties of the first part, and Catherine Nelson, of the county of Clay, as the party of the second part. No question is made on the record as to this deed, and we assume it was conceded to be sufficient. Plaintiff introduced no other evidence to sustain the issues on her part.

Defendant read, without objection, the deposition of Daniel A. Stout, in substance as follows: "Sometime in the spring of 1875, I was at Gosneyville and was called upon by W. F. Nelson, and consented to by Geo. W. Owen, to witness a certain contract respecting a house and lot in Gosneyville, which contract was in writing, which was read, but don't know the particular wording; sufficient to say the deed was to be made about the 1st of June. Mr. Owen said the law knows nothing about 'bouts,' but wanted a specified time. Mr. Nelson replied to Owen if he never got the deed he would have nothing to pay. Owen refused, and determined to pay no money or give any note until a deed was made to him. The agreement was not signed by Owen in my presence or with my knowledge; my understanding was the property belonged to W. F. Nelson, and the said Owen was purchasing the same from him. So far as anything occurred that day, I had no reason to believe that Catherine Walker had any claim upon the property whatever."

Defendant then testified: "I did not sign the bond that was given me for the lot, and never paid anything on it; I am not holding the property now." This was all the testimony in the case.

As showing the theory on which the court decided the

case under the evidence, we append the instructions given and refused. The court refused the following declarations of law asked by plaintiff:

1. If defendant took plaintiff's written contract (duly signed) for a deed to the lot, and agreed to pay therefor to plaintiff $200 when the deed was executed, and pursuant to the contract entered upon and occupied the lot and store-house thereon, never having offered to return the property or rescind the contract, then he became bound to pay the $200, whether he signed the contract or not, and his refusal to accept the deed and to pay the money on the 21st day of June, 1873, entitles plaintiff to recover the said $200 and six per cent interest per annum thereon from that date.

2. Under the law and evidence of this case the court will find for plaintiff for the $200, and six per cent interest thereon from June 21st, 1873.

The court gave the following declarations asked by the defendant, over plaintiff's objection:

1. Owen, who is charged to have purchased the lands by parol agreement, may insist upon the defense of the statute of frauds. A part performance by Owen of said parol contract for the sale of said real estate, will not avail the plaintiff who sold the land. Although the plaintiff signed a contract which bound her, yet Owen is not bound by said contract unless he signed the same or some other writing.

Counsel for respondent insists, for the first time in this court, we think, that the judgment should be affirmed be-

1. PRACTICE: what questions may be raised on appeal. cause the record fails to show that plaintiff adduced a perfect title to the lot. If from this we are to understand that she did not trace her title to the original source, it is very clear that no such question was mooted in the court below. The controversy between the parties seems to have been as to whether plaintiff or W. F. Nelson held the title, and plaintiff having shown possession in herself and paper title sufficient to show that

she was the owner and not W. F. Nelson, the question of title was not further controverted. This is manifest from the instructions presented by the learned counsel himself, in which the question of title is ignored and the case submitted on the sole theory that the statute of frauds constituted an absolute bar to a recovery; and it was upon this theory alone the court decided the case. Had plaintiff understood that her title was controverted to its original source, she would probably have been able to trace a perfect paper title. Be this as it may, the question of title was not tried or mooted further than heretofore stated, the case was submitted by counsel and decided by the court on an entirely different theory, and respondent is not entitled to an affirmance of his judgment on a theory not tried below. It would be an act of gross injustice to plaintiff to affirm this judgment on a question that has never yet been decided in the court, when she was denied a recovery on the sole ground that the contract on which she relied was absolutely void because not signed by the defendant. Respondent must stand or fall in this court by the theory on which he tried and submitted his case in the court below. *Whetstone v. Shaw*, 70 Mo. 575.

In this view of the case it is unnecessary to consider the question whether the tender of a warranty deed is sufficient to warrant a recovery of the purchase money by a vendor who has executed a bond conditioned for the payment of the purchase money on the delivery of such a deed. Hence, if the court erred on the question actually submitted and decided, the judgment should be reversed and the cause remanded in order that the question of title may be properly tried. A somewhat similar course was pursued by this court in *Luckett v. Williamson*, 31 Mo. 54; *s. c.*, 37 Mo. 388, a case very much relied on by respondent.

PHILIPS, C.—The foregoing part of this opinion was written by Winslow, C., and left incomplete at the time of his unfortunate death.

Walker v. Owen.

The only question presented by the record for additional consideration is, whether or not the statute of frauds interposed by defendant will prevent a recovery by the plaintiff. The circuit judge held that as the title bond was not signed by the vendee, the party sought to be charged, the case came within the provisions of the 5th section of the act relating to Frauds and Perjuries. If nothing more appeared in the evidence than the contract of sale signed by the vendor alone, the position of the respondent would be tenable. But this is not all. The defendant as vendee, under the title bond, took possession of the premises. There was afterward in the transaction of the medicine obtained of defendant by plaintiff, one dollar of the purchase money paid. There was on the lot when sold a storehouse, which defendant took possession of, under the contract, and used for months as a retail storeroom, and was so using the same when it burned down. He never, so far as appears from the evidence, returned or offered to return the property to plaintiff. Where a vendee thus takes possession of real estate under a title bond from the vendor, and the improvements thereon are destroyed, the loss falls on the vendee. *Snyder v. Murdock*, 51 Mo. 175. The defendant is not in a position to rescind the sale if he desired, for he cannot put the vendor in *statu quo* by restoring to him the property he obtained from him. And where the vendee thus takes possession of a lot of small value, with a building thereon of material value, and while he so holds and enjoys the property the improvements are suffered to decay or burn down, he cannot, on the plainest dictates of justice and equity, abandon the property, and when called on for the purchase money invoke the statute of frauds as a defense. The statute designed to prevent fraud cannot thus be made the instrument of fraud and injustice. *Tatum v. Brooker*, 51 Mo. 148; *Woods v. Straup*, 63 Mo. 433; *Harvey v. Morris*, 63 Mo. 477, 478.

With respect to the case of *Tatum v. Brooker*, it may

*[margin note: 2. STATUTE OF FRAUDS: recovery of purchase price: destruction of improvements.]*

be sufficient to say it is not necessary to support the ground
on which we place this decision that we should approve all
the learned judge said in the course of the opinion in that
case.   The important fact there was that:   " The defendant
took possession and worked the mine as his own under the
contract of purchase, and appropriated the proceeds of the
mine to his own use and paid part of the purchase money."
That was quite enough to justify the conclusion reached
by the court.   The vendee had used the estate and partially
consumed it, so he could not restore it in kind, and in such
case he could not withhold the purchase money when de-
manded by the vendor.

In the case of *Woods v. Straup, supra,* the vendee had
taken possession and cut and carried away the principal
part of the timber.  Wagner, J., said :   " There was no at-
tempt to disaffirm or rescind, and such a thing could not
have been done, as the plaintiff and his assignor (the vendee)
had been and were in continuous possession, and had com-
mitted waste and permanently injured the value of the land.
There could have been no restoration so as to have sub-
stantially placed the parties in their former position."   The
statute of frauds was never designed to shelter a party who
thus takes possession of property and enjoys it until the
building is destroyed while being occupied by him, and
who then, and not until then, walks off without an offer of
restitution.

There is another question which perhaps ought to be
determined as the case is to be remanded, although not
3. ——: ——: hus-   suggested in argument by counsel.   It ap-
band and wife.           pears from the record that the contract of
sale sought to be specifically enforced, was made by a mar-
ried woman.   It not appearing that the property was her
separate estate she was incapable at common law of making
any binding contract executory in its character, touching
the estate.  The contract of sale could not have been specific-
ally enforced against the *femme covert* by the vendee.   And
as contracts susceptible of specific performance must ordi-

narily possess the element of reciprocity or mutuality, if the vendee could not maintain it, can the vendor? The disability of a *femme covert* to make an executory contract, and the lack of power in courts of equity to enforce remedies against her looking to the completion of her imperfect conveyances, were fully discussed and settled in *Shroyer v. Nickell*, 55 Mo. 264. So that, but for the peculiar situation of this case, calling into operation other principles of equity jurisprudence, it would be difficult to sustain the bill in this action. In *Neef v. Redmon*, 76 Mo. 195, 197, this question was considered, and it was held that where the married woman has done all on her part required by the contract, it will be enforced against the other party, and it will make no difference that she could not have been compelled to perform the agreement. On the basis of this decision how much stronger is the equity of the plaintiff's cause, where the vendee has taken possession of the property under the contract, used and occupied it until the building on it was destroyed, and who does not offer either compensation or performance? The plaintiff has done all on her part required by the contract. It is no longer executory on her part. As is said in the case last cited, page 198, "the principle which exonerates her from personal liability on any contract she may make, is a shield for the protection of herself and husband, and is not to be used as a weapon for their destruction."

There, too, is this further fact disclosed by the record: during the pendency of this action the plaintiff became discovert, and the suit by an entry of record was continued in her name as a *femme sole*. This was such an affirmance made by record by her when discovert as would take the case out of the operation of the rule that would deny her a recovery for lack of mutuality in the contract. This I think was, in effect, determined in the case of *Price v. Hart*, 29 Mo. 171.

The judgment of the circuit court is reversed and the cause remanded for further proceeding in conformity with this opinion. All concur.