In re: RULES OF the CIRCUIT COURT FOR the TWENTY–FIRST JUDICIAL CIRCUIT.

No. 67397.

Supreme Court of Missouri, En Banc.

Oct. 11, 1985.

Post-Opinion Motions Overruled Nov. 1, 1985.

PETITION TO ACCEPT AND FILE AS CERTIFIED THE LOCAL RULES OF THE TWENTY–FIRST JUDICIAL CIRCUIT

PER CURIAM.

This matter comes to us in the posture of a Petition to Accept and File as Certified The Local Rules of the Twenty-First Judicial Circuit. Relevant litigation history preceding this petition includes an investigation of the matter by the Court of Appeals of the Eastern District, an opinion by this Court in *Gregory v. Corrigan,* 685 S.W.2d 840 (Mo. banc 1985) and another opinion of this Court in *Nolan v. Stussie,* 695 S.W.2d 869 (Mo. banc 1985). *Gregory* and *Nolan* reflect the fact that the Court has to date exercised a high degree of judicial restraint by deciding these matters on the narrowest possible ground in the hope that the Twenty-First circuit could, independent of superior court action, arrive at an amicable resolution to its problems.

The restraint exercised by this Court has not produced the anticipated independent solution of the problem by the Twenty-First circuit. The right of the citizens of St. Louis County and the practicing bar of St. Louis County to have an orderly administration of justice makes it imperative that there now be a prompt and final resolution of this matter. The responsibility for such resolution now resides in this Court. Mo. Const. art. V, § 5.

The unified system of Missouri courts created by Mo. Const. art. V, 1945, as amended in 1976, contemplates that the three levels of courts be administered by the Chief Justice of this Court, Chief Judges in the Courts of Appeals, and Presiding Judges in the circuit courts, each having general supervision of that part of the judiciary which they oversee. The most cursory examination of Article V, our Rules of Court, our Administrative Rules, the legislative enactments pertaining to the

judiciary and our Handbook for Presiding Judges, (Dec. 28, 1984), leaves no doubt that all contemplate that these administrative officers shall have the power to exercise strong leadership in a fair and just manner. The thirteen guidelines for Presiding Judges set forth in the Handbook are attached as Appendix A to this opinion.[1] The power of the chief administrative officer to administer and run the court or courts within such officer's jurisdiction is subject only to the power of the majority of the Court or of a superior court to overrule such decision or order of the chief judge. These are powers rarely, if ever, required to be exercised in the orderly administration of justice. It has always been accepted that these chief administrative officers are to be elected by a majority of the court on which they sit. It is against this background that we must identify and define the cause or causes of the trouble in the Twenty-First Judicial Circuit.

The present difficulties in the Twenty-First circuit are all traceable to Mo. Const. art. V, § 15.3, which was a part of the comprehensive revision of the judicial article in 1976. This section provides that the presiding judge of circuit courts shall be elected by the circuit and associate circuit judges. This has made possible in the Twenty-First circuit an election of the presiding judge by the associate circuit judges acting in concert with a minority of the circuit judges. Section 15.3 constituted an open invitation to form the factions which have so effectively brought to a standstill the orderly administration of justice in the Twenty-First circuit. The associate-dominated faction places heavy reliance on interpreting certain statutes together with § 15.3 to claim independent powers inimical to the efficient and unified operation of the circuit. Nothing is to be gained by debating whether the form of § 15.3 was the product of skilled lobbying on the part of the former magistrates for the purpose of staking out certain areas of political influence and patronage, or whether it was the unintended product of a well-intentioned but misunderstanding Bar and electorate. We can no longer avoid the inevitable conclusion that the amendment as passed is diametrically opposed to and in direct contradiction of the general purpose and spirit of the remainder of the judicial article. Based upon the repeated filings in this Court, there appears to be no prospect of the associates retreating from their claimed right to retain the sacred areas of influence and patronage and to control the election of the presiding judge pursuant to art. V, § 15.3.

Both factions have resorted to the rule-making power as a vehicle for establishing their alleged right to control the election of the presiding judge and administration of the circuit. The first effort was made by the majority of the circuit judges adopting proposed Rule 100.1.1(4) which restricted to the circuit judges the power to nominate the candidates for presiding judge. This rule was declared unconstitutional by this Court in *Gregory*. The next effort was by the majority of the circuit judges adopting proposed Rule 100.1.5, which would strip the presiding judge (elected by a majority of the circuit and associate judges) of the usual and customary powers and duties of his office, and in lieu thereof place such powers in a "Planning Committee" elected and controlled by the majority of the circuit judges. In *Nolan*, we declared the local court rules of the Twenty-First circuit invalid and ordered the circuit to promulgate new rules as soon as possible in accordance with guidelines suggested therein.

The presiding judge, elected by a majority of the circuit and associate judges, refused to call a meeting of the circuit judges for the purpose of adopting court rules, but did appoint a Rules Committee to draft and

---

1. On the varied and extensive powers of the presiding judge, see §§ 478.240, 479.020.5, 479.-270, 485.010, 534.060, RSMo 1978; § 478.255, RSMo Cum.Supp.1984; §§ 478.245, 535.020, 1985 Mo.Legis.Serv. 414, 433 (Vernon). *See also* American Bar Association Comm'n on Standards of Judicial Administration, Standards Relating to Trial Courts § 2.33 (1976); American Bar Association Comm'n on Standards of Judicial Administration, Standards Relating to Court Organization § 1.33 (1974).

propose new rules. The majority of the circuit judges then met and adopted rules. The presiding judge refused to certify the rules adopted by the majority of circuit judges who in turn filed their petition in this Court praying that we accept and file the rules as certified, or in the alternative, that we order the presiding judge to do the ministerial act of certifying and filing the rules. The presiding judge called a conference of the court en banc for September 28, 1985, indicating that at such conference some of such rules would be declared to have been adopted by the majority of the circuit judges pursuant to § 478.245.1, RSMo 1985, but that others would be determined to be orders requiring approval of a majority of the associate and circuit judges pursuant to § 478.245.4, RSMo 1985. This Court stayed such action on petition of the majority of the circuit judges pending this Court's action on the rules proposed for filing.

## I

Nothing in Mo. Const. art. V, except § 15.3 thereof, contemplates participation in the election of the presiding judge of the court by the associate circuit judges. Reduced to the simplest of terms, nothing in art. V contemplates running the judiciary from the bottom up as opposed to from the top down.

█ We are not sure that any other court has ever faced the same situation that we now face, that of having a single section of the Constitution in such direct contravention to all of the other provisions of its Constitution. We know of no other case where a supervising court has been faced with such a total breakdown in the orderly administration of an arm of its judicial system. We know of no other court which has a record of more sacredly guarding the right of the people to speak through their Constitution. Weighing this right against the right of the people to have an orderly administration of justice, we now conclude that we cannot and will not enforce that part of art. V, § 15.3 which purports to grant to associate circuit judges the right to participate in the election of the presiding judge pending further resolution of the contradictory provision by the people.

We make this determination pursuant to what we believe to be our constitutional power and pursuant to what we know is our duty and obligation to the people who suffer from the breakdown of this arm of the judiciary.

## II

Mo. Const. art. V, § 15.1 unequivocally provides that "The circuit judges of the circuits may make rules for the circuit not inconsistent with the rules of the Supreme Court." Nothing in the Constitution authorizes any judge or court to make "orders" in derogation of this rule-making power.

█ While we are cognizant of the power the legislature is granted by Mo. Const. art. V, § 5 to "annul or amend in whole or in part" our rules of practice and procedure, this does not include the power to interfere with this Court's "superintending control of all courts and tribunals" as is provided in Mo. Const. art. V, § 4.1 and our rules made pursuant thereto. We view § 478.245.4, RSMo 1985, to be in derogation of the rule-making power granted by Mo. Const. art. V, § 15.1. and thereby unconstitutional. While we have made no effort herein to review the multitude of statutes relating to circuit courts, we will have no choice when presented with the same other than to hold all parts of such statutes not consistent with this opinion to be unconstitutional and unenforceable.

## III

Both factions have asserted that the Twenty-First Judicial Circuit is operating without rules. Pursuant to our general supervisory authority, Mo. Const. art. V, § 5, the Rules of Court Twenty-First Judicial Circuit, filed in connection with this petition, are ordered and now deemed to be filed in this Court with the exception that all references to any right of the associate

circuit judges to vote on the election of the presiding judge shall be deleted therefrom consistent with this opinion. The stay order is dissolved and the motions for appointment of attorney and the appointment of a commissioner are overruled.

## IV

In the event that there be any further evidence of inability of the Twenty-First Judicial Circuit to operate the circuit so as to assure the orderly administration of justice, this Court is prepared to relieve any then serving presiding judge of his or her duties and to assign a neutral judge to supervise the circuit subject to approval of this Court until such time as the orderly administration of justice be assured in the Twenty-First circuit. The people of St. Louis County are entitled to nothing less.

HIGGINS, C.J., and BILLINGS, BLACKMAR, DONNELLY, WELLIVER, and ROBERTSON, JJ., concur.

RENDLEN, J., not participating.

### ORDER

Respondent Campbell's Motions for Withdrawal of Opinion Filed, for an Evidentiary Hearing, for Joinder of Necessary and Indispensable Parties, and for Appointment of a Neutral Presiding Judge, or in the Alternative, for a Rehearing, are overruled.

Honorable George R. Gerhard's Motions to Intervene, To Withdraw Opinion, and For a Hearing, are overruled.

All timely post-opinion motions now having been ruled and the opinion having become final, the judges of the Twenty-First Judicial Circuit are ordered and directed, as soon as reasonably practicable, to do all things necessary to assure the orderly administration of justice in the Twenty-First Judicial Circuit, consistent with the opinion.

### APPENDIX A

### GUIDELINES FROM PRESIDING JUDGE'S HANDBOOK

**GUIDELINE # 1:** *Court en Banc Meetings*

1. There should be regular court en banc meetings with all circuit and associate circuit judges of the circuit to discuss and decide court business.

2. The presiding judge should call and preside over court meetings and in the presiding judge's absence a designee should preside.

3. While the number of meetings may vary in each circuit, there should be a minimum of four meetings each year.

4. An agenda should be circulated in advance of the meeting with a known method of how matters may be placed on the agenda.

5. Minutes of each meeting should be recorded and preserved.

6. Other than judges, those attending the meeting should be by court invitation only.

7. On what issues associate circuit judges should vote is left to the sound discretion and judgment of each circuit and the applicable sections of the state constitution and statutes.

**GUIDELINE # 2:** *Absence of Presiding Judge*

When the presiding judge is absent from the circuit, an acting presiding judge should be appointed. The method of designating an acting presiding judge may be by local court rule or at the discretion of the presiding judge. All parties as must necessarily be informed should be notified of the judge acting as presiding judge.

**GUIDELINE # 3:** *Coordination of Judicial Schedules*

1. The presiding judge should monitor the vacation and school schedules of judges and be responsible for an orderly plan of judicial absences from court duties.

2. Each judge of the circuit should give reasonable advance notice of his or her absence to the presiding judge.

**GUIDELINE # 4:** *Court Committees*

The presiding judge has the authority and should, where appropriate, make use of

court committees composed of other judges and court personnel to investigate problem areas, handle court business, and report to the presiding judge and/or the court en banc.

**GUIDELINE # 5:** *Outside Agencies and the Media*

1. It is the primary responsibility of the presiding judge to be available to meet with outside agencies, such as the prosecuting attorney, the city attorneys, public defenders, sheriff, police chiefs, bar association leaders, probation and parole officers, county governmental officials, civic organizations, and other state agencies. He is the primary representative of the circuit at ceremonial functions.

2. The presiding judge is the proper judge to make any statements to the media on court matters and to provide general information about the court and the law, its procedures, practices and rulings, where ethics permit.

**GUIDELINE # 6:** *Municipal Divisions*

1. The presiding judge shall supervise the municipal divisions in the circuit and provide counsel and advice to the municipal judges.

**GUIDELINE # 7:** *Docket Management and Case and Judge Assignments*

The presiding judge should:

1. Monitor the status of the dockets in the circuit and implement improved methods and systems of managing dockets.

2. Assign cases in accordance with local court rules, assign judges and cases, and establish procedures that will provide an established and equitable distribution of the workload within the circuit that will accomplish the prompt disposition of cases.

3. Request assistance of visiting judges when needed to handle the workload of the circuit.

4. Discuss problems of delay with other judges and offer necessary assistance to expedite the disposition of cases.

**GUIDELINE # 8:** *Local Court Rules*

The presiding judge shall:

1. Certify and file with the circuit clerk and the clerk of the Supreme Court a copy of each circuit court rules, [and such orders as allowed under Section 478.245(4) RSMo.] (bracketed portion held unconstitutional in this opinion).

2. Insure that copies of the local court rules are available to interested persons.

**GUIDELINE # 9:** *Circuit Court Personnel*

The presiding judge should provide for the efficient utilization of personnel within the circuit.

**GUIDELINE # 10:** *Facilities*

The presiding judge should, in cooperation with appropriate legislative bodies, provide adequate facilities for the operation of the circuit court and its divisions.

**GUIDELINE # 11:** *Record Keeping*

The presiding judge should:

1. Upon court en banc approval and authorization, issue orders for the destruction or transfer of records.

2. Coordinate the compilation of management and statistical information necessary for the administration of the circuit.

3. Establish policies and procedures and make certain that the clerks and employees are advised and aware of these policies.

4. Approve proposals for computerization within the circuit in compliance with administrative rules.

**GUIDELINE # 12:** *Budgets*

The presiding judge should:

1. Supervise and coordinate the development of all judicial budgets.

2. Present the budget to the county administrative body for adoption.

3. Supervise the expenditure of money throughout the budget year.

**GUIDELINE # 13:** *General Authority and Judicial Officers*

The presiding judge is charged with the responsibility for the effective operation of the court.

The presiding judge is charged with the implementation and enforcement within the

circuit of statutes, rules, policies, and directives of the Supreme Court as they pertain to the administration of the circuit court, orders of the court en banc and local rules.

In the event that another judge of the circuit refuses a reasonable directive of the presiding judge, interferes with the effective operation of the court, abuses his judicial position, or violates the Judicial Canons of Ethics, the presiding judge should consider one or more of the following options:

1. Explain to the resisting judge the reasons for the directive or position taken and listen to the response. Reevaluate your position.

2. If the problem persists, determine the available alternatives. Discuss and evaluate the alternatives with the resisting judge.

3. Discuss the position of both parties with other judges and reevaluate your position.

4. Present the problem to the court en banc or a committee of judges for a recommendation, or establish a procedure within the circuit for resolving disputes between judges and the presiding judge, such as requiring the resisting judge and the presiding judge to state in writing, within a stated and reasonable time, his or her reasons for a position. Forward all to a higher authority such as a court committee, the court en banc, or the chief justice of the Supreme Court for final determination.

5. Report the resisting judge to the chief justice of the Supreme Court for appropriate action.

6. Where the refusal is willful and continual, report the resisting judge to the Commission on Retirement, Removal, and Discipline.