Draper, J., concurs in separate opinion filed;
Stith, J., concurs in opinion of Draper, J.
CONCURRING OPINION
George W. Draper III, Judge
I concur in the principal opinion's holding reversing the circuit court's judgment and entering judgment for Judge Steele and Judge Swaim.[1] While I agree Decker waived her statutory authority by entering into the 2008 consolidation agreement, I believe Plaintiffs likewise waived their challenge to the validity of this Court's *569 2009 order through their pleadings. More importantly, I am compelled to write separately to discuss that which the principal opinion is unwilling to address: the impact of this Court's 2009 and 2013 orders on the 2008 consolidation agreement, which the principal opinion acknowledges consumed substantial portions of the circuit court's judgment and the parties' appellate briefs and argument before the court of appeals and this Court.
Waiver
A careful reading of Plaintiffs' pleadings and the procedural posture of this case establishes Plaintiffs waived their challenge to the validity of the 2009 court order in their summary judgment motion. Count I focused solely on the May 2013 and April 2014 amendments, arguing the purported appointment of any judge, or anyone other than the elected circuit clerk, violated Missouri constitutional provisions and section 483.245.[2] Count II concerned alleged state sunshine law violations, which were dismissed voluntarily.
Judge Steele's motion to dismiss noted that to invalidate the May 2013 and April 2014 amendments, the circuit court also would have to find the 2009 court order and the circuit court budget committee's (hereinafter, "the CCBC") approval of the amendments was unconstitutional. Judge Swaim's motion to dismiss argued, "This case belongs in [this Court], because only [this Court] may resolve a dispute over the authority of a circuit court, and only [this Court] may determine the validity of its own orders." Judge Swaim's memorandum in support of her motion to dismiss recognized Plaintiffs were contesting the validity of the 2009 court order.
The circuit court addressed the issues raised in the motions to dismiss in a docket entry order on July 17, 2015, stating in part:
It appears to [the circuit court] that the ultimate issue before it is whether the Supreme Court [of Missouri] has the authority (1) to issue an administrative order that may, upon implementation, [divest] an elect[ed] official of her statutory authority to be the appointing authority with hire and fire power over her staff and (2) do so without violating the [s]eparation of [p]owers?
By their written suggestions in support of their respective motions to dismiss and in their oral arguments, [Judge] Swaim and [Judge] Steele, jointly and severally, suggest that original jurisdiction in this matter lies in the Supreme Court [of Missouri]....
The circuit court analyzed whether Plaintiffs should have filed a writ with this Court to resolve the 2009 court order's validity. However, the circuit court determined first it should decide whether Judge Steele acted in accord with the 2009 court order's procedure. The circuit court reasoned, if Judge Steele failed to follow the proper procedure, his failure would render moot the issue of whether the 2009 court order was valid. The circuit court overruled the motions to dismiss but expressed a willingness to allow the parties to seek a writ with this Court, which did not occur.
A month after the July 17, 2015, order, Plaintiffs filed their motion for summary judgment, framing two issues to be resolved: (1) whether the circuit court could designate anyone other than the elected circuit clerk as the appointing authority without violating the separation of powers, the Missouri constitution, and section 483.245; and (2) assuming the transfer of the circuit clerk's appointing authority was proper, whether Judge Steele's purported *570 transfer without approval of the Second Judicial Circuit en banc complied with the procedural requirements of the 2009 court order. Plaintiffs expressly conceded:
[The 2009 court order] itself does not raise a separation of powers question, and Plaintiffs do not challenge it in this action. [The 2009 court order] avoids constitutional issues because its language left discretion about its implementation to the circuit courts themselves, in view of the fact that not every Missouri circuit court has the same internal organization. The [2009 court order] is not in tension with [section] 483.245, because section 2 of that provision provides that county charters may vest the appointing authority of the circuit clerk in others.... Plaintiffs challenge the Second Circuit's implementation of the [2009 court order], not the [2009 court order] itself.
Plaintiffs proceeded under the express assumption the 2009 court order was valid and applied to the Second Judicial Circuit when arguing Judge Steele did not comply with its procedural requirements in seeking to adopt the May 2013 amendment.
Judge Swaim responded that the April 2014 amendment complied with the 2009 and 2013 court orders because it was adopted by unanimous vote of the Second Judicial Circuit en banc and approved by the CCBC. Judge Swaim further argued the 2009 and 2013 court orders did not violate the Missouri Constitution or section 483.245.2. Judge Steele made substantially similar arguments and additionally argued Plaintiffs' procedural defect argument must fail because they voluntarily dismissed count II.
"Generally, a party on appeal 'must stand or fall' by the theory on which he tried and submitted his case in the court below." State v. Pierce , 433 S.W.3d 424, 428 (Mo. banc 2014) (quoting Walker v. Owen , 79 Mo. 563, 568 (Mo. 1883) ). "Under this general rule, issues that are not raised in the trial court are waived." Id. Plaintiffs never raised a constitutional challenge to the 2009 or 2013 court order. To the extent the motions to dismiss raised the issue, it is apparent Plaintiffs' subsequent summary judgment motion explicitly waived and abandoned this issue. Hence, I agree this Court need not address or resolve Plaintiffs' waived constitutional challenges to the 2009 court order.
This Court's 2009 and 2013 Orders
Approximately eighteen months after Decker entered into the 2008 consolidation agreement, then-Chief Justice William Ray Price Jr. signed an order on behalf of this Court pursuant to article V, section 4 of the Missouri Constitution directing "all circuit courts that have not previously consolidated all deputy circuit clerks and division clerks under the supervision of one appointing authority shall be consolidated." Consolidation of court personnel was necessary in light of the budget constraints facing the state at the time. The 2009 court order stated, "The appointing authority shall be either the circuit clerk or court administrator if the county does not have a circuit clerk, an associate circuit judge of the county, or the presiding judge of the circuit." The 2009 court order further provided, "The presiding judge, after consultation with the court en banc, the circuit clerk, and any other appointing authority, shall submit a plan to the [CCBC] designating the appointing authority for all deputy circuit clerks and division clerks...." Finally, the 2009 court order stated, "If a court has submitted a plan to the ... [CCBC] prior to October 1, 2009, and it has been approved, it shall be deemed in compliance with the consolidation requirements under this order."
*571 On June 28, 2013, then-Chief Justice Richard B. Teitelman signed an order on behalf of this Court modifying 2009 court order, recognizing the 2009 court order failed to provide a procedure to modify previously ordered consolidation plans. The 2013 court order directed "the circuit court en banc, after consultation with the circuit clerk and other appointing authority, may submit any proposed revisions to its consolidation plan to the [CCBC] for its approval."
In this case, the Second Judicial Circuit en banc resolved the dispute between Decker and Judge Steele by transferring Decker's appointing authority to Judge Steele. Later, the Second Judicial Circuit en banc transferred this authority from Judge Steele to Judge Swaim. Its authority for this action was the 2009 court order, which expressly provided it was made pursuant to article V, section 4, which provides, "The supreme court shall have general superintending control over all courts and tribunals.... Supervisory authority over all courts is vested in the supreme court which may make appropriate delegations of this power."
The 2009 court order provided several options to choose from when designating the appointing authority, including "either the circuit clerk or court administrator if the county does not have a circuit clerk, an associate circuit judge of the county, or the presiding judge of the circuit." The 2008 consolidation agreement initially chose the circuit clerk as its appointing authority. The 2009 court order recognized if a consolidation plan had been adopted before the 2009 court order, "it shall be deemed in compliance with the consolidation requirements under this order." Hence, the 2008 consolidation agreement was brought under the auspices of the 2009 court order or "grandfathered in."
On appeal, the parties debated the validity of the 2009 court order and whether this Court has any constitutional authority-express, inherent, or otherwise-to order the consolidation of court personnel under a single appointing authority. This Court's power to exercise "superintending control" over the lower courts has been guaranteed constitutionally since 1820 and has remained relatively unchanged since its inception. See Mo. Const. art. V, sec. 3 (1820) ("The supreme court shall have a general superintending control over all inferior courts of law. It shall have power to issue writs of Habeas Corpus, Mandamus, Quo Warranto, Certiorari, and other original remedial writs, and to hear and determine the same."); Mo. Const. art. VI, sec. 3 (1865) (same); Mo. Const. art. VI, sec. 3 (1875) ("The Supreme Court shall have a general superintending control over all inferior courts. It shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, and other original remedial writs, and to hear and determine the same."). However, the current Missouri constitution grants this Court "superintending control over all courts and tribunals" along with "[s]upervisory authority over all courts" which may be delegated. Mo. Const. art. V, sec. 4.1.
"This Court must assume that every word contained in a constitutional provision has effect, meaning, and is not mere surplusage." Pestka v. State , 493 S.W.3d 405, 409 (Mo. banc 2016) (quoting State v. Honeycutt , 421 S.W.3d 410, 415 (Mo. banc 2013) ). Hence, "superintending control" and "supervisory authority" are distinct powers constitutionally granted to this Court. "Superintending control" historically contemplates this Court's ability to control a lower court's actions or jurisdiction by way of writ proceedings. See , e.g. , State ex rel. Barker v. Wurdeman , 254 Mo. 561, 163 S.W. 849, 850 (Mo. banc 1914) ("Under the Constitution of this state ..., this *572 court has a general superintending control over all inferior courts and as a means of maintaining same is clothed with power to issue writs of habeas corpus, quo warranto, certiorari, and other original remedial writs and to hear and determine same."). By contrast, "supervisory authority" contemplates administration of the courts. For example, article V, section 8 of the Missouri Constitution provides this Court's chief justice "shall be the chief administrative officer of the judicial system and, subject to the supervisory authority of the supreme court , shall supervise the administration of the courts of this state." (Emphasis added); see also Heinen v. Healthline Mgmt., Inc. , 982 S.W.2d 244, 247 (Mo. banc 1998).
This Court's 2009 order was signed by this Court's then-Chief Justice, pursuant to article V, section 4, and concerned the administration of the courts of this state by ordering consolidation of court personnel. Plaintiffs conceded the 2009 court order "avoided constitutional issues," in essence recognizing it was a valid exercise of this Court's constitutional authority. Because the 2009 court order contemplated applying to all circuit courts regardless of when consolidation was achieved, and because article V, section 4 grants this Court the express supervisory authority over all courts, which may be delegated, I contend the Second Judicial Circuit's May 2013 and April 2014 amendments were constitutional exercises of this Court's delegated supervisory authority to name an appointing authority and would reverse the circuit court's judgment on this basis.

However, I am concerned with the lack of legal authority cited by the principal opinion in its analysis of all of the claims presented by the parties.

All statutory references are to RSMo 2000.