

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

KARLA K. ALLSBERRY, Individually
and in her official capacity as the Clerk of
the Circuit Court for Lincoln County,
Missouri,

                                Appellant-Respondent,

v.

THE HONORABLE STEVEN R.
OHMER, et al.,

                               Respondents-Appellants.

**WD84992**
**(Consolidated with WD85001)**

**OPINION FILED:**
**May 17, 2022**

### Appeal from the Circuit Court of Cole County, Missouri
### The Honorable Daniel R. Green, Judge

**Before Division One:** Mark D. Pfeiffer, Presiding Judge, and
Karen King Mitchell and Gary D. Witt, Judges

This is a consolidated appeal and cross-appeal from the judgment entered by the Circuit

Court of Cole County, Missouri ("circuit court"), in favor of Karla K. Allsberry ("Allsberry" or

"Clerk Allsberry"), on the second amended petition for declaratory judgment, injunctive relief,

and judicial review filed by Allsberry, individually and as the elected Circuit Clerk of Lincoln

County within the 45th Judicial Circuit, against the circuit judges and associate circuit judges

appointed by the Missouri Supreme Court to the Circuit Court Budget Committee ("CCBC") and

the Presiding Judge and two of the associate circuit judges of the 45th Judicial Circuit (collectively, "Judicial Appellants").

For reasons explained herein, we reverse and, pursuant to Missouri Supreme Court Rule 84.14, give such judgment as the circuit court ought to have given.[1]

**Factual and Procedural Background**

The salient facts necessary to this Court's disposition are not in dispute.

On January 1, 2003, the Presiding Judge, the Associate Circuit Judges of Divisions 2 and 3, and the Circuit Clerk of Lincoln County entered into an Agreement for the Establishment of a Consolidated Court in Lincoln County, Missouri ("2003 Consolidation Agreement"). The 2003 Consolidation Agreement provided, in part, that "[t]he Circuit Clerk shall be appointing authority over all non-statutory state-aid positions assigned to the Circuit Court of Lincoln County." The 2003 Consolidation Agreement was approved by the CCBC.

On October 8, 2009, on behalf of the Missouri Supreme Court *en banc*, Chief Justice William Ray Price, Jr. issued an Order ("2009 Order") regarding consolidation of clerk personnel. In light of then-existing budget constraints facing the State, the 2009 Order mandated that, pursuant to article V, section 4 of the Missouri Constitution, all circuit courts that previously had not consolidated the supervision of deputy and division clerks under one appointing authority do so. The 2009 Order provided: "The appointing authority shall be either the circuit clerk or court administrator if the county does not have a circuit clerk, an associate circuit judge of the county, or the presiding judge of the circuit." The 2009 Order also instructed: "The presiding judge, after consultation with the court en banc, the circuit clerk, and any other appointing authority, shall

---

[1] Judge Janet Sutton is a party to this cause of action (solely in an official capacity as a result of her previous appointment to the Circuit Court Budget Committee ("CCBC") at the relevant times of this lawsuit) and became a member of this Court in December 2021. Accordingly, Judge Sutton is recused from this case and has not participated in any discussion with the members of this Court regarding today's ruling in any manner whatsoever.

submit a plan to the circuit court budget committee designating the appointing authority for all deputy circuit clerks and division clerks by November 13, 2009[.]" The 2009 Order further stated: "If a court has submitted a plan to the circuit court budget committee prior to October 1, 2009, and it has been approved, it shall be deemed in compliance with the consolidation requirements under this order."

On June 28, 2013, on behalf of the Missouri Supreme Court *en banc*, Chief Justice Richard B. Teitelman issued an Order ("2013 Order") providing a procedure to modify plans consolidating clerk personnel. The 2013 Order stated that "the circuit court en banc, after consultation with the circuit clerk and other appointing authority, may submit any proposed revisions to its consolidation plan to the circuit court budget committee for its approval."

On November 6, 2018, Allsberry was elected Clerk of the Circuit Court of Lincoln County, and Judge Patrick S. Flynn ("Judge Flynn") was elected as sole Circuit Judge (and thereby the Presiding Judge) for the 45th Judicial Circuit, consisting of Pike and Lincoln counties. Both Clerk Allsberry and Judge Flynn took office on January 1, 2019. The Missouri Supreme Court has described the relationship between Clerk Allsberry and Judge Flynn immediately following their respective elections as follows:

> Intense conflict between the two began immediately and escalated over the weeks and months. There was considerable evidence at trial about the parties' acrimonious power struggle, the rift this discord created among the staff at the Lincoln County courthouse, and the disruption their dysfunctional professional relationship caused . . . .

*Allsberry v. Flynn*, 628 S.W.3d 392, 393 (Mo. banc 2021). Indeed, between January and April 2019, there were a series of hostile, accusatory, and generally uncooperative written

3

communications by and between Judge Flynn and Clerk Allsberry,[2] all of which arose out of an amendment to the 2003 Consolidation Agreement.

On January 10, 2019, Judge Flynn notified Associate Circuit Judges James Beck, Milan Berry, and Gregory Allsberry (Clerk Allsberry's husband), and Clerk Allsberry of a January 11 *en banc* meeting of the 45th Judicial Circuit, the subject of which was a proposed amendment ("2019 Amendment") to the 2003 Consolidation Agreement for Lincoln and Pike Counties.[3] The proposed 2019 Amendment would change the appointing authority from the Circuit Clerk to the Presiding Judge of the 45th Judicial Circuit. At the *en banc* meeting, Judge Flynn explained the proposed changes to the 2003 Consolidation Agreement, and Clerk Allsberry expressed her views as to why she should remain the appointing authority for the Circuit Clerk's office. Judges Flynn, Beck, and Berry voted for the 2019 Amendment, and Judge Allsberry abstained.[4]

The CCBC approved the 2019 Amendment on January 18, 2019. On April 12, 2019, the CCBC voted to deny Clerk Allsberry's appeal of the CCBC's approval of the 2019 Amendment.

Clerk Allsberry filed suit against the Judicial Appellants on May 18, 2019. Allsberry subsequently filed an amended petition and was granted leave to file a second amended petition

---

[2] This contentious and dysfunctional "turf war" is likely the product of two *good* people with *good* intentions for serving their constituents but, due to personal acrimony, they are each treating the other *badly*. Judges and Circuit Clerks take oaths to *serve others*—the public who elected or retained them—*not themselves*. Judges and Circuit Clerks must be servant leaders. Servant leadership contemplates the notion of placing the needs of others before one's own needs—setting aside self-pride or wounded pride. Servant leadership seeks to find compromise with colleagues—not conflict. Servant leadership cares more about extending olive branches than keeping a scorecard of who offended whom and how many times. For the good of the administration of justice for the citizens and litigants in Lincoln County, we implore Judge Flynn and Clerk Allsberry to find a middle ground of inclusivity and respect toward one another that will permit them to get out of the business of "stone-throwing" and back into the business of *serving others, not self*. We say these words as judicial branch fellow travelers, recognizing that nobody within the judicial branch of government has perfected the ideals of servant leadership; but, we owe it to the citizens of Missouri to try harder every day to resemble those ideals.

[3] The 45th Judicial Circuit consists of Lincoln and Pike counties. Between 2003 and 2019, an additional associate circuit judge for this judicial circuit was funded by the legislature. In 2019, Judge Berry was the Associate Circuit Judge for Pike County and Judge Beck and Judge Allsberry were the Associate Circuit Judges for Lincoln County.

[4] Clerk Allsberry has never challenged the 2019 Amendment on voting irregularity grounds; instead, she only asserts that the vote itself was not statutorily permitted.

for: (1) a declaratory judgment that defendants acted in excess of their authority in violation of the Missouri Constitution and Chapter 483 (Count I); (2) a declaratory judgment that defendants acted in excess of their authority by approving a plan that violated sections 610.010 and 610.020 (Count II); (3) injunctive relief that defendants' action violated Allsberry's rights as a voter and taxpayer protected by the Missouri and United States Constitutions (Count III); and (4) judicial review under the Missouri Administrative Procedures Act ("MAPA") (Count IV).

After motions to dismiss and summary judgment were filed, the circuit court conducted a hearing on July 12, 2021, wherein the circuit court heard arguments from counsel for the parties as to the application of law to the undisputed and material facts.

The circuit court entered its judgment on November 29, 2021. In its judgment, the circuit court declared that both the 2019 Amendment and CCBC's approval of the 2019 Amendment were "void, illegal, in excess of the power and authority of defendants, and [] unenforceable" because both actions "violate[] RSMo. §483.245.2 and RSMo. §483.080." The circuit court declared Clerk Allsberry as the appointing authority and permanently enjoined all of the defendants below (*e.g.,* Judicial Appellants) "from interfering with, or preventing, [Clerk Allsberry's] exercise of her authority to hire, fire and supervise the deputy clerks as provided by RSMo. §483.245.2 and RSMo. §483.080." And, the circuit court awarded prevailing party attorney's fees to Clerk Allsberry pursuant to section 536.087 and section 536.084(4).

The circuit court expressly rejected any notion that it did not possess jurisdiction to decide the dispute between the parties, though the circuit court curiously concluded that it did *not* possess jurisdiction to decide the constitutional application of Chief Justice Price's 2009 Order or Chief Justice Teitelman's 2013 Order; nor did the circuit court discuss whether the Missouri Supreme Court's authority created under the Missouri Constitution to administer the courts of

5

Missouri had any effect upon statutory enactments that conflicted with the exercise of that constitutional authority.

Herein lies the crux of the current appeal—the interplay between statutory rights and constitutional authority. Though both parties have appealed and cross-appealed issues relating to jurisdiction, statutory rights to Circuit Clerks, constitutional authority possessed and retained by the Missouri Supreme Court to administer Missouri's courts, interpretation of agency law as applied to the CCBC, and corresponding issues of prevailing party attorney's fees, the resolution of this appeal lies in applying the clear guidance our Missouri Supreme Court has given all courts with regard to its constitutional authority to administer the courts and to delegate such responsibility as it so chooses.

This Court ordered the separate appeals of the parties consolidated. We address the parties' points together because the overarching issue they raise is the authority of the Missouri Supreme Court to administer Missouri's court system.

**Standard of Review**

"Both the appeal and cross-appeal raise claims that the circuit court erroneously declared and applied the law. These claims are reviewed *de novo*." *Flynn*, 628 S.W.3d at 395 (internal citation omitted). And, where as here, our review requires discussion of constitutional provisions, we note that "constitutional provisions are subject to the same rules of construction as other laws, except that constitutional provisions are given a broader construction due to their more permanent character." *StopAquila.Org v. City of Peculiar*, 208 S.W.3d 895, 899 (Mo. banc 2006) (citing *State ex inf. Ashcroft ex rel. Bell v. City of Fulton*, 642 S.W.2d 617, 620 (Mo. banc 1982)).

**Analysis**

Our analysis fills the hole left by the void of the circuit court's judgment: the question of whether courts inferior to the Missouri Supreme Court possess jurisdiction to apply administrative orders of our Missouri Supreme Court—we do. And, the bigger question of whether our Missouri Supreme Court's constitutional authority to administer the courts is superior to any conflicting legislative provision—it is. We reach these conclusions not by *interpretation* of Missouri's Constitution—a matter left to the exclusive jurisdiction of the Missouri Supreme Court—but rather by *application* of the precedent that our Missouri Supreme Court has given the lower courts to guide us in the constitutional matters that are raised in the present proceeding.

For the Missouri Supreme Court to have exclusive jurisdiction over a constitutional claim, "'[t]he constitutional issue must be real and substantial [and] not merely colorable.'" *Chesterfield Spine Ctr., LLC v. Best Buy Co.*, 617 S.W.3d 450, 460 (Mo. App. W.D. 2021) (quoting *Glass v. First Nat'l Bank of St. Louis, N.A.*, 186 S.W.3d 766, 766 (Mo. banc 2005)). "In determining whether a constitutional claim is merely colorable, a preliminary inquiry is made as to whether the claim presents a contested matter of right that involves fair doubt and reasonable room for disagreement." *Id.* (internal quotation marks omitted). "If such inquiry reveals that the claim is so legally and factually insubstantial as to be plainly without merit, the claim may be deemed merely colorable." *Id.* (internal quotation marks omitted). Here, the constitutional claims are not real and substantial but are, instead, merely colorable. Hence, we possess jurisdiction to decide this appeal.[5]

Article V, section 1 of the Missouri Constitution vests the judicial power of the state in the Supreme Court and other courts. Specifically, the Missouri Supreme Court possesses "supervisory

---

[5] This statement of law disposes of the parties' dueling arguments on the topic of jurisdiction on appeal, on which we comment no further in our ruling today.

authority" and "general superintending control" over all courts. Mo. Const. art. V, § 4. These are "distinct powers constitutionally granted to [the Missouri Supreme] Court." *Gall v. Steele*, 547 S.W.3d 564, 571 (Mo. banc 2018) (Draper, J., concurring). "'Superintending control' historically contemplates [the Missouri Supreme] Court's ability to control a lower court's actions or jurisdiction by way of writ proceedings." *Id.* (citing *State ex rel. Barker v. Wurdeman*, 163 S.W. 849, 850 (Mo. banc 1914)). "By contrast, 'supervisory authority' contemplates administration of the courts." *Id*. Review of article V, section 4 shows that the Supreme Court has superintending jurisdiction over inferior courts and other "tribunals," which includes administrative bodies. *State v. Kinder*, 89 S.W.3d 454, 459 (Mo. banc 2002); *In re Rules of Circuit Court for Twenty-First Jud. Cir.*, 702 S.W.2d 457, 459 (Mo. banc 1985); *State ex rel. A & G Com. Trucking v. Dir. of Manufactured Housing & Modular Units*, 168 S.W.3d 680, 683 (Mo. App. W.D. 2005). "Subject to the supervisory authority of [the Missouri Supreme] Court, the Chief Justice—as chief administrative officer of the judicial system—supervises the administration of all Missouri courts." *Heinen v. Healthline Mgmt., Inc*., 982 S.W.2d 244, 247 (Mo. banc 1998) (citing Mo. Const. art. V, § 8).

The Missouri Supreme Court has explicitly recognized its distinct power to exercise supervisory authority to administer the courts and it is commonly understood that where the Supreme Court acts upon its constitutional authority of superintending control to administer the courts, such administrative acts supersede any statute that interferes or conflicts with such acts of administration of the courts by the Missouri Supreme Court. *See Hill v. Ashcroft*, 526 S.W.3d 299, 314 (Mo. App. W.D. 2017) (citing *Labrayere v. Bohr Farms, LLC*, 458 S.W.3d 319, 327 (Mo. banc 2015)); *State ex rel. Peabody Coal Co. v. Powell*, 574 S.W.2d 423, 426 (Mo. banc 1978) (explaining that pursuant to the rule-making authority for the courts vested in the Missouri

8

Supreme Court by article V, section 5 of the Missouri Constitution, where a rule is issued by the Supreme Court pursuant to this constitutional authority and is inconsistent with a statute, "the rule supersedes that statute").

Here, the question for determination is whether statutory provisions relating to the appointing authority for court personnel take precedence over administrative orders issued by our Missouri Supreme Court pursuant to its superintending and supervisory authority under article V, section 4 of the Missouri Constitution. Our Missouri Supreme Court has consistently answered this question in the negative, to-wit:

> While we are cognizant of the power the legislature is granted by Mo. Const. art. V, sec. 5 to 'annul or amend in whole or in part' our rules of practice and procedure, this does not include the power to interfere with this Court's 'superintending control of all courts and tribunals' as is provided in Mo. Const. art. V, sec. 4.1 and our rules made pursuant thereto.

*Kinder*, 89 S.W.3d at 459 (quoting *In re Rules of Circuit Court for Twenty-First Jud. Cir.*, 702 S.W.2d at 459).

In addition to the Missouri Constitution's *explicit* grant of supervisory authority, Missouri recognizes the concept of the inherent power of a court. *State ex rel. St. Louis Cnty. v. Edwards*, 589 S.W.2d 283, 289 n.4 (Mo. banc 1979); *see also State ex rel. Gentry v. Becker*, 174 S.W.2d 181, 183 (Mo. 1943) ("[T]he 'inherent powers' of courts have been recognized and enforced—that is, those powers necessarily inherent in the court 'to do all things that are reasonably necessary for the administration of justice' and in order that it may preserve its existence and function as a court and which powers exist and inhere merely because it is a court and irrespective of legislative or constitutional grant."). "'Inherent powers do not depend upon statutory authorization as their source.'" *Edwards*, 589 S.W.2d at 289 (quoting *State ex rel. Cain v. Mitchell*, 543 S.W.2d 785, 786 (Mo. banc 1976)). "Instead, the inherent powers of courts confer *judicial independence* from

9

*executive* or *legislative* control in four separate, but not mutually exclusive, areas: separation of powers, *logistical support, court governance*, and implementation of the adjudicative function." *In re Area 16 Public Defender Office III*, 609 S.W.3d 743, 754 (Mo. App. W.D. 2020) (internal quotation and citations omitted and emphasis added).

"[W]ithin the inherent power of the courts is the authority to do all things that are reasonably necessary for the administration of justice." *State ex rel. Weinstein v. St. Louis Cnty.*, 451 S.W.2d 99, 101 (Mo. banc 1970), *superseded by statute as recognized in State ex rel. Twenty-Second Jud. Cir. v. Jones*, 823 S.W.2d 471, 473 (Mo. banc 1992)). "The court has inherent and constitutional authority to employ necessary personnel with which to perform its inherent and constitutional functions . . . ." *Id.* "[This] right cannot be made amenable to and/or denied by . . . the legislature itself." *Id.* at 102. A contrary conclusion "would vest in the legislative department of government the power to determine the extent to which the judicial department could perform its judicial functions." *Id.*

The Missouri Constitution provides that "[p]ersonnel to aid in the business of the circuit court shall be selected as provided by law or in accordance with a governmental charter of a political subdivision of this state." MO. CONST. art. V, § 15.4. The phrase "as provided by law" means "as prescribed or provided by statute" or by "other provisions of the constitution." *Wann v. Reorganized Sch. Dist. No. 6*, 293 S.W.2d 408, 411 (Mo. 1956). To that end, the Missouri legislature enacted section 483.245.2 in 1981, which, in pertinent part, declared the circuit clerk to be the appointing authority for all deputy circuit clerks. And, the legislature was well within its constitutional authority to enact such legislation, which, at that time, was *not* in conflict with any rule or order of the Missouri Supreme Court on the same topic. However, when that statute finds itself in the current predicament of contradicting express administrative orders of the Missouri

10

Supreme Court relating to the constitutional authority vested in the Supreme Court to administer the courts, the statute must yield to the action of the Supreme Court in the exercise of its superintending control of all courts and tribunals.

The legislature may *assist* the judiciary through statutory enactments, but it may not *override* the Missouri Supreme Court's inherent power as well as explicit constitutional grant of supervisory authority over lower courts, including its delegation of authority to the lower courts to designate appointing authorities for deputy and division clerks. *See In re Thompson*, 574 S.W.2d 365, 367 (Mo. banc 1978) ("Although the legislature may assist the court by providing penalties for the unauthorized practice of law and thus may define that term, the legislature may in no way hinder, interfere, or frustrate the court's inherent power to regulate the practice of law."); *see also In re Area 16 Public Defender Office III*, 609 S.W.3d at 754 (explaining that courts will tolerate statutory regulation of their inherent powers, so long as any such statutory regulation is not hostile to the court's inherent powers relating to, but not limited to, logistical support for the courts).

"'The circuit clerk is an arm of the circuit court. The circuit clerk does not act independently of the circuit court, but acts under the supervision of the judge.'" *Coburn v. Kramer & Frank, P.C.*, 627 S.W.3d 18, 35 (Mo. App. E.D. 2021) (quoting *Twentieth Jud. Cir. v. Bd. of Comm'rs*, 911 S.W.2d 626, 628 (Mo. banc 1995)). "[T]he clerk is an agent of the circuit judge and possesses the statutory authority to perform certain tasks." *Id.* (internal quotation marks omitted).

The present situation is very similar to our Supreme Court's discussion in *In re Rules of Circuit Court for the Twenty-First Judicial Circuit*, where our Supreme Court discussed the application of section 478.245.3, RSMo 1985, and its impact upon the administrative structural decision-making authority of the subject circuit court and a corresponding statutory mandate

11

granting associate circuit judges equal authority as circuit judges of the same circuit. 702 S.W.2d at 459. Ultimately, after finding that section 478.245.4 was in contradiction to the administrative rule-making authority vested in the Supreme Court by article V, section 4.1 of the Missouri Constitution, and corresponding actions that the Supreme Court had taken pursuant to such constitutional authority, our Supreme Court found that section 478.245.4 "interfere[d] with [the Supreme Court's] superintending control of all courts and tribunals" and concluded that the statutory mandate of section 478.245.4 was required to yield to the action of the Supreme Court in exercising its constitutional authority to administer the courts. *Id.*

Applied here, we must reach the same conclusion—the statute must yield to the actions of the Missouri Supreme Court in exercising the constitutional authority vested in our Supreme Court to administer the courts.

Accordingly, we reject Clerk Allsberry's argument that the legislature's enactment of sections 483.245.2 and 483.080 overrides the constitutional grant of supervisory authority to the Missouri Supreme Court under article V, section 4. The 2009 and 2013 Orders were an exercise, by Chief Justices Price and Teitelman, of the Missouri Supreme Court's constitutional supervisory authority over the lower courts granted to the Missouri Supreme Court under article V, section 4.[6]

As recited in the factual background, *supra*, in 2003, the Presiding Judge, the Associate Circuit Judges of Divisions 2 and 3, and the Circuit Clerk of Lincoln County entered into the 2003 Consolidation Agreement, which provided, in part, that "[t]he Circuit Clerk shall be appointing authority over all non-statutory state-aid positions assigned to the Circuit Court of Lincoln

---

[6] Further, Allsberry's argument would render article V, section 4's vesting of supervisory authority over all courts in the Missouri Supreme Court "meaningless surplusage," thereby violating the tenet that every word in the Missouri Constitution must be given meaning. *Mo. Chamber of Com. & Indus. v. Mo. Ethics Comm'n*, 581 S.W.3d 89, 96 (Mo. App. W.D. 2019). Clearly, the supervisory authority granted the Missouri Supreme Court under the Missouri Constitution trumps any contradictory statutory provision relied upon by Clerk Allsberry.

County." The 2003 Consolidation Agreement was thereafter approved by the CCBC, and there is no complaint by Clerk Allsberry about the 2003 Consolidation Agreement nor the CCBC's involvement in approving the form of that Consolidation Agreement; for, the approved 2003 Consolidation Agreement was in compliance with the consolidation requirements of the 2009 Order.

The 2013 Order, which provided a procedure to modify plans consolidating clerk personnel, stated that "the circuit court *en banc*, after consultation with the circuit clerk and other appointing authority, may submit any proposed revisions to its consolidation plan to the circuit court budget committee for its approval." On January 10, 2019, Judge Flynn notified Associate Circuit Judge Beck, Associate Circuit Judge Berry, Associate Circuit Judge Allsberry, and Clerk Allsberry of an *en banc* meeting of the 45th Judicial Circuit to consider the proposed 2019 Amendment to the 2003 Consolidation Agreement, which would change the appointing authority from the elected Circuit Clerk to the Presiding Judge of the 45th Judicial Circuit. At the *en banc* meeting and after receiving input from Clerk Allsberry, a majority of the member judges voted for the 2019 Amendment. The 2019 Amendment was then submitted to the CCBC and was approved on January 18, 2019, since the 2019 Amendment complied with the form of amendment dictated by the Missouri Supreme Court's 2013 Order.[7] Hence, at that point in time, appointing authority was vested in the Presiding Judge—Judge Flynn—and the 2019 Amendment is legally binding upon the parties.

---

[7] The parties argue over the application of Chapter 536 to the CCBC; however, given our ruling that the CCBC acted as directed by the Missouri Supreme Court in the 2013 Order, we need not and do not address Chapter 536 principles of agency as they may or may not relate to the CCBC. Further, the only relevance of that topic in the underlying proceeding relates to Allsberry's assertion of the right to attorney's fees as the prevailing party pursuant to Chapter 536. Since Allsberry is not the prevailing party in this proceeding, she cannot be entitled to attorney's fees under any theory. And, the Judicial Appellants have not sought the award of attorney's fees.

Therefore, the circuit court's judgment—by failing to address the Missouri Supreme Court's constitutional authority to administer the courts—has erroneously declared conflicting statutory provisions to be controlling over the Missouri Supreme Court's exercise of its constitutional authority to administer the courts and the circuit court's judgment must be reversed.

Specifically, the circuit court's judgment declaring the 2019 Amendment and the CCBC's approval of the 2019 Amendment and denial of administrative appeal by Allsberry to be "illegal, void, in excess of the power and authority of [Judicial Appellants], and [] unenforceable" is reversed; to the contrary, we declare just the opposite today—that the 2019 Amendment and subsequent actions by the CCBC are expressly authorized by the Missouri Supreme Court's 2009 and 2013 Orders regarding consolidation of appointing authority and, accordingly, we declare that the Presiding Judge—Judge Flynn—is the appointing authority pursuant to the 2019 Amendment. Further, the circuit court's judgment awarding a permanent injunction and attorney's fees and costs in favor of Clerk Allsberry is reversed.

Rule 84.14 authorizes this Court to issue the judgment that the circuit court should have entered[8] and we do so in accordance with our ruling today.

**Conclusion**

The trial court's judgment is reversed, and pursuant to Rule 84.14, we declare that the administrative orders of the Missouri Supreme Court are the exercise of the Court's supervisory authority to administer the courts of this state as granted by article V, section 4 of the Missouri Constitution, and that approval of the 2019 Amendment was the exercise of the Missouri Supreme

---

[8] Rule 84.14 allows our court to "give such judgment as the court ought to give" and instructs that "[u]nless justice otherwise requires, the [appellate] court shall dispose finally of the case." Reliance on Rule 84.14 "is particularly appropriate for judgments where the salient facts are not in dispute, but the only dispute is the legal significance of the facts." *Am. Civil Liberties Union of Mo. v. Ashcroft*, 577 S.W.3d 881, 900 n.20 (Mo. App. W.D. 2019) (internal quotation marks omitted).

Court's delegated authority to the circuit courts *en banc* to modify consolidation plans and to the CCBC to approve the form of those revisions, and that the 2019 Amendment is the operative and legally binding consolidation agreement of the 45th Judicial Circuit.[9]  In all other ways, the judgment shall be deemed to comply with our ruling today.

/s/ *Mark D. Pfeiffer*
Mark D. Pfeiffer, Judge

Karen King Mitchell and Gary D. Witt, Judges, concur.

---

[9] Upon issuance of the final mandate, the stay issued by this Court on December 9, 2021, shall be deemed lifted, ***but only upon such time as final mandate has issued***.  We caution Judge Flynn ***not*** to exercise his power as appointing authority under the 2019 Amendment until and unless a final mandate has issued in this Court or upon receiving permission to do so from a higher court—should a higher court order transfer of this appeal to that court.