**Honorable Ellis GREGORY, Jr., et al., Plaintiffs-Respondents,**

**v.**

**Honorable William CORRIGAN, et al., Defendants-Appellants.**

**No. 66614.**

Supreme Court of Missouri, En Banc.

Feb. 26, 1985.

F. Wm. McCalpin, Michael A. Vitale, St. Louis, for defendants-appellants.

Alan G. Kimbrell, St. Louis, for plaintiffs-respondents.

PER CURIAM.

This case arises out of a dispute within the Twenty-first Judicial Circuit concerning local rules of court. At issue is the validity of two of the circuit's local court rules. It has reached this Court by virtue of an appeal from a declaratory judgment by a special trial judge appointed by this Court to hear the case. The trial judge found both rules to be null and void. We affirm in part and reverse in part, finding one of the two rules valid.

The disputed rules were adopted by a majority of the circuit judges in an en banc meeting of the Twenty-first Judicial Circuit on June 3, 1984. Local Rule 100.1.1(4)[1] limits candidates for presiding judge to those whose nominations are seconded by a majority of the circuit judges. Local Rule 100.1.2(3)[2] vests in the presiding judge certain administrative powers. Among these are the authority to assign division clerks, direct the circuit clerk to establish an office for the maintenance of court files and transfer the operation of the traffic control offices for case assignments to the circuit clerk. By reason of Mo. Const. art. V, § 15.1, only circuit judges make the rules.

of court, so that the associate circuit judges did not participate in the adoption of these two local rule amendments.

On July 20, 1984, twelve of the thirteen associate circuit judges of the Twenty-first Judicial Circuit instituted this suit, naming as defendants thirteen of the twenty circuit judges of the circuit. The plaintiffs sought declarations that the two amended rules were invalid. They also sought to enjoin enforcement of the new rules. The circuit judges moved for dismissal of the cause, but their motion was overruled. The trial court sustained a motion for temporary injunctive relief and subsequently ruled in favor of the plaintiffs as to the validity of the local court rule amendments. We granted expedited review.

On appeal to this Court, the circuit judges initially challenge as error the trial court's refusal to dismiss the case on a jurisdictional basis. Defendants assert that this issue should have been presented to the Supreme Court in the first instance by a petition for review.

■ We note that the present case involves the validity of the constitution and statutes of this state. Thus, arguably, this case falls within the Supreme Court's exclusive appellate jurisdiction, pursuant to Mo. Const. art. V, § 3 (as amended). Further, this case is one in which the trial judge was appointed by order of this Court under our supervisory powers, and we now take jurisdiction to review his findings irrespective of the procedural avenue which has been followed. In view of the need for judicial economy, we will not dismiss this cause merely to permit the plaintiffs to institute another action by some other means, particularly when both parties re-

1. Local Rule 100.1.1(4): (Election) At the election meeting each Circuit Judge and each Associate Circuit Judge shall be entitled to offer one Circuit Judge for Presiding Judge of the Circuit. However, no candidate shall be deemed nominated until his or her nomination is seconded by a majority of the Circuit Judges present and voting at said meeting.

2. Local Rule 100.1.2(3): (Duties of Presiding Judge) The Presiding Judge shall have the au-

thority to assign clerical personnel, not including any chief division clerk or any clerk appointed by the Judge of the Probate Division, to the Circuit Clerk, and the Circuit Clerk shall establish an office or offices at appropriate locations in the Courts Building to maintain and have responsibility for all court files, except those assigned to the Probate Division, and operate the control offices established under Rule 63 herein for the Associate Circuit Divisions.

quest review by this Court. We recognize and direct that it would be better that future disputes of this sort be presented in the first instance to the Supreme Court and this Court may consider them administratively under its supervisory powers.[3]

■ In disposing of the merits of this case, it is necessary for this Court to determine whether the disputed rules comport with applicable constitutional or statutory provisions. Appellants have argued that Mo. Const. art. V, § 15.3 and § 478.240.2, RSMo 1978, authorize the enactment and implementation of Rule 100.1.2(3). We agree.

As previously stated, Local Rule 100.1.-2(3) is the amended provision which vests in the presiding judge the authority to more effectively administer the workings of the circuit court by assigning clerical personnel, establishing a centralized filing office, and transferring the supervision of the traffic control offices. These powers coincide with those set forth in Article V, § 15.3, which states that the presiding judge has "general administrative authority over the court and its divisions," subject, of course, to the rule making authority of the circuit judges under Mo. Const. art. V, § 15.1. Similarly, § 478.240.2 states that the presiding judge has the prerogative "to assign any judicial or court personnel anywhere in the court." These provisions clearly reflect the intent that the presiding judge is to have administrative control, again subject to the rule making authority of the circuit judges, not just over the business of the circuit judges, but over the entire court, including the divisions. Any other reading of these enactments runs counter to the primary objective sought to be achieved by the 1976 amendments to the Missouri Constitution.

The 1976 amendments to the judicial article create a three tier court system consisting of the Supreme Court, Courts of Appeals, and the Circuit Courts. Mo. Const. art. V, § 1 (1945, as amended 1976). Probate, magistrate and municipal courts are abolished as separate entities and incorporated into the circuit system as divisions of the circuit courts. Mo. Const. art. V, § 27.2(a), (b) (1945, as amended 1976). The constitutional amendments did not fashion associate circuit courts. Instead, the former magistrates were enveloped into the circuit system as associate circuit judges to be assigned to particular divisions of the circuit court. Therefore, when the constitution refers to the authority of the presiding judge over the circuit court and its *divisions,* it is unequivocally referring to tribunals of the associate circuit judges.

Plaintiffs counter that the disputed Local Rule 100.1.1(3) cannot be valid since other constitutional provisions allegedly preserve administrative authority in the associate circuit judges. For instance, plaintiffs cite Mo. Const. art. V, § 27.3, which reads, in part, that the "practice, procedure, filing fees and administration of causes heard by associate circuit judges within the jurisdiction of former magistrate and probate courts shall be and remain the same as in the court abolished." This argument is flawed, however, by the fact that the quoted language has been lifted from a subsection which outlines the types of cases over which associate circuit judges can preside.

■ It is manifest that words used in constitutional provisions must be viewed in context. *Buechner v. Bond,* 650 S.W.2d 611, 613 (Mo. banc 1983). When Article V, § 27.3 is read in its entirety, it becomes evident that the framers were preserving for the associate circuit judges the judicial authority to adjudicate the rights of litigants, as had been done in the magistrate courts. We also note that the drafters of this subsection did not state that the associate circuit judges were to have the same administrative powers as the former magistrates. The provision refers, instead, to "administration *of causes*" (emphasis added). Since all words used in constitutional provisions are presumed to have some purpose, *State Highways & Transportation*

---

**3.** However, this procedure is not intended to impinge upon or preclude the application of regular judicial processes in matters of this kind.

*Com'n v. Director of Revenue,* 672 S.W.2d 953, 955 (Mo. banc 1984); *Buechner v. Bond, supra,* we must interpret this language as a limitation on the powers of the associate circuit judges.

■ Furthermore, the plaintiffs' reading of this constitutional subsection would place it directly in conflict with Article V, § 15.3 which specifically bestows in the presiding judge general administrative authority over the divisions. Since we are to attempt to harmonize all provisions of the constitution, *State ex. inf. Martin v. City of Independence,* 518 S.W.2d 63, 66 (Mo. 1974), the plaintiffs' contentions in this regard must be rejected.

Likewise, we are not persuaded that Article V, § 27.10(a) and various statutory provisions preclude the presiding judge from reassigning division clerks and their deputies to the circuit clerk's supervision. The state constitution states only that the "selection" of the clerk and deputies of the respective divisions shall continue in the same manner as had been the practice in the magistrate courts. Nothing in the constitution dictates that once selected, the clerks must remain under the supervision of the associate circuit judge.

Certainly, if the division clerks remained under the supervision of the associate circuit judges, the concept of a unified court system would be undermined. Because it is our view that each section of the judicial article must be construed as consistent with the concept of a unified court system, the term "selection" in this instance cannot be interpreted beyond its literal meaning. To the extent that there exist contrary statutory provisions, those statutes must give way to mandates of the constitution.

■ With respect to Local Rule 100.1.-1(4), however, we agree with the trial court that the rule is invalid. This is the provision which states that candidates for presiding judge must receive a second to their nomination from a majority of the circuit judges. This rule conflicts with that portion of the constitution which reads that:

> The circuit and associate circuit judges in each circuit shall select by secret ballot a circuit judge from their number to serve as presiding judge.

Mo. Const. art. V, § 15.3 (1945, as amended 1976). The constitution could not be more explicit in requiring that both circuit and associate circuit judges participate in the election of a presiding judge. Because the amended local rule in its present form effectively circumvents this constitutional directive and is tantamount to a disenfranchisement, it is hereby declared invalid.

■ Although the holding of this opinion is to recognize that the associate circuit judges are constitutionally authorized to participate in the process for election of "a circuit judge ... to serve as presiding judge," we emphasize that adoption of the local rules of court is the prerogative of the circuit judges of the circuit. Mo. Const. art. V, § 15.1 makes this manifest:

> The circuit judges of the circuit may make rules for the circuit not inconsistent with the rules of the supreme court.

Therefore, while the presiding judge possesses a substantial variety of powers, including those previously referred to in this opinion, local rules adopted by a majority of the circuit judges may direct how those powers are to be implemented by the presiding judge. Thus, by local rule, not inconsistent with the constitution, Supreme Court rule or statutes, the circuit court may provide, *inter alia,* for procedures for the docketing and handling of cases, types of court committees within the circuit, the administrative, budgetary, accounts, records and personnel workings of the entire circuit court and its divisions, including the associate circuit judges. It follows, of course, that the presiding judge in exercising the administrative powers must abide by the local court rules as adopted by the circuit judges.

The judgment is affirmed in part and reversed in part.[4]

---

4. This Court recognizes, with appreciation, the splendid handling of a difficult case by the

Honorable Stephen R. Pratt, who was assigned

RENDLEN, C.J., and HIGGINS, GUNN, BILLINGS, BLACKMAR and DONNELLY, JJ., concur.

WELLIVER, J., concurs in part and dissents in part in separate opinion filed.

WELLIVER, Justice, concurring in part and dissenting in part.

I concur in all of the principal opinion except that part thereof that holds Local Court Rule 100.1.1(4) to be invalid by reason of being contrary to Mo. Const. art. V, § 15.3. Rule 100.1.1(4) is neither invalid nor unconstitutional on its face, regardless of its potential for being unconstitutional in its application.

I cannot agree with the underlying premise of the majority opinion that the power of the circuit judges to promulgate and adopt administrative rules will in itself solve the problems plaguing the Twenty-First Judicial Circuit. Rulemaking power without the right to select the officer to administer the rules may be no power at all. Striking down Local Court Rule 100.1.-1(4) leaves a situation which has the same potential for political maneuvering, factionalism, obstruction, and administrative breakdown that has plagued the Twenty-First Judicial Circuit during the past two or more years.

The principal opinion brings into sharp focus the fact that § 15.3 [1], appears contrary to and out of step with the unified court system contemplated and established by the other provisions of Art. V. The revised judicial article adopted in 1976 contemplates a judiciary integrated from top to bottom for the purpose of efficient and economical use of judicial personnel and resources. The method for accomplishing this purpose is as clear as any business or military organizational chart. General supervision and control over the entire judici-

ary is placed in the Supreme Court. Mo. Const. art. V, § 4. Each court of appeals exercises general supervisory control over the circuit courts within their statutory district. *Id.* The circuit courts exercise certain supervisory controls over the divisions within their statutory districts. Art. V, § 15. All exercise their administrative functions through their chief administrative officer, who in all other instances is elected by the majority vote of the judges serving on the court in question.

Section 15.3, read as the majority reads it, permits the associate circuit judges together with any dissident circuit judges, to pass over any judge or judges they deem unacceptable and to elect the presiding judge of their choice. This is control from the bottom up and not from the top down. It is in direct contradiction to the manifest intent of Art. V as a whole. This destroys the ability of the majority of the circuit judges acting through their chief administrative officer to exercise supervisory control over the component divisions of the circuit court.

Clearly, this contradiction in Art. V merits future reconsideration by the voters, a process which may well take several years. In the meantime, having identified the contradiction, our courts have the duty to harmonize the existing sections of the Constitution, if such can be done. *Staley v. Missouri Director of Revenue,* 623 S.W.2d 246 (Mo. banc 1981).

Read, in harmony with the other sections of Art. V, § 15.3 does no more than grant to the associate circuit judges the right and power to participate and have input in the selection of the presiding judge of the circuit court. This is certainly true so long as two or more circuit judges are nominated by the circuit judges in accordance with the rule.[2] I am aware that if the circuit judges

the task by this Court of acting as special judge in this controversy involving his peers.

**1.** Section 15.3 read as follows: "The circuit and associate circuit judges in each circuit shall select by secret ballot a circuit judge from their number to serve as presiding judge. The presid-

ing judge shall have general administrative authority over the court and its divisions."

**2.** It is noteworthy that in harmonizing the sections, the circuit judges have reserved to the associate circuit judges the ability to pass over one or more of those judges nominated and presented for their consideration, a power now

should nominate only a single candidate, it could be argued that they had, in effect, deprived the associate circuit judges of participation in the election process. This question is not now before us.

Nothing on the face of Rule 100.1.1(4) appears to contradict the general intent and purpose of Art. V or the specific wording of § 15.3. Nothing in § 15.3 requires that associate judges have equal rights with circuit judges to nominate who from among the circuit judges shall be considered for election as presiding judge. Rule 100.1.1(4) could not have been more artfully drafted to harmonize § 15.3 with the remainder of Art. V.

This is no time for half solutions. Rule 100.1.1(4) as adopted by the circuit judges merits our approval.

compatible with accepted Missouri judicial practice.