STATE of Missouri, ex inf. Jeremiah W. (Jay) NIXON, Attorney General of Missouri, Relator,

v.

Judith K. MORIARTY, Respondent.

No. 77364.

Supreme Court of Missouri, En Banc.

Feb. 21, 1995.

damus, we suspended Ms. Moriarty from exercising the duties of her office while allowing her to enjoy all other emoluments of her office pending the trial of her impeachment.

## I.

Ms. Moriarty was elected to the office of Secretary of State by the voters of Missouri for the term commencing January 11, 1993, to expire in January, 1997. On October 6, 1994, the House of Representatives voted to impeach Ms. Moriarty. Three articles of impeachment, numbered 2, 3, and 4, were transmitted to this Court for trial. Article 2 charged that Ms. Moriarty purposely caused, directed, or allowed the signature of Barbara Campbell to be placed on a declaration of candidacy filed on behalf of Tim Moriarty for the office of state representative, which declaration was blank and not signed by Tim Moriarty, falsely stating that Tim Moriarty appeared in her presence at 1:19 p.m., March 29, 1994. Article 3 charged that Ms. Moriarty purposely caused, directed, or allowed the signature of Tim Moriarty to be placed on his declaration of candidacy falsely stating that he appeared and signed said declaration at 1:19 p.m., March 29, 1994. Article 4 charged that Ms. Moriarty purposely caused, directed, or allowed the signature of Barbara Campbell to be placed on a declaration of candidacy filed on behalf of Tim Moriarty for the office of state representative, which declaration was partially blank and had not been signed by Mrs. Campbell, falsely stating that Tim Moriarty had appeared in Mrs. Campbell's presence on March 29, 1994, at 1:19 p.m. and signed the declaration.

On October 7, 1994, the Attorney General filed this proceeding in *quo warranto*. *Quo warranto* is a special procedure utilized to permanently remove or oust a person from public office. The Attorney General based this action upon section 106.050, RSMo 1986, which provides that:

> If any officer shall be impeached, he is hereby suspended from exercising his office, after he shall be notified thereof, until his acquittal.

Jeremiah W. (Jay) Nixon, Atty. Gen., Don Downing, Deputy Atty. Gen., Jefferson City, for relator.

Stuart K. Berkowitz, St. Louis, for respondent.

## PER CURIAM.

This action was filed on October 7, 1994, as a *quo warranto* seeking the ouster of Judith K. Moriarty from the office of Secretary of State. We heard the action on October 11, 1994. Treating the petition as one for man-

Ms. Moriarty answered the petition generally admitting that the House of Representatives had impeached her. Moriarty, however, asserted that our holding in *State ex inf. Shartel v. Brunk*, 326 Mo. 1181, 34 S.W.2d 94 (1930), established that a *quo warranto* action against a statewide elected official such as herself was unconstitutional. Oral argument as to this matter of law was held on October 11, 1994, and on that same day we entered our order with opinion to follow.

## II.

 The office of Secretary of State exists pursuant to the Constitution of Missouri and is designated as an office in the Executive Department. *Mo. Const.* art. IV, §§ 12, 14. The office is filled by an individual elected statewide for a term of four years. *Id.* art. IV, § 17. The Secretary of State serves in this manner at the pleasure of the people of Missouri. The tenure of office for all statewide officials, including the Secretary of State, is also controlled by the Constitution. Article VII, Section 12, states:

> *Except as provided in this constitution,* and subject to the right of resignation, all officers shall hold office for the term thereof, and until their successors are duly elected or appointed and qualified.

(Emphasis added.) The single method provided in the Constitution for removal from office of statewide elective executive officials, such as the Secretary of State, is impeachment. *Id.* art. VII, §§ 1–3. The exclusivity of this method is further emphasized by article VII, section 4, regarding the removal of state officers not subject to impeachment. There, the Constitution provides that:

> Except as provided in this constitution, *all officers not subject to impeachment* shall be subject to removal from office *in the manner and for the causes provided by law.*

(Emphasis added.) The plain reading of these sections of the Constitution can allow only one conclusion. Elective executive officials may be removed from office solely and exclusively by impeachment pursuant to article VII, sections 1–3 of our Constitution, while any other officer may be removed in a manner provided by law. Thus, while the legislature may enact statutes providing for the removal from office of most state officers, the legislature is without authority to enact statutes that automatically provide for the removal from office of any elective executive official of the state, including the Secretary of State.[1]

 In *State ex inf. Shartel v. Brunk*, these very issues were extensively discussed. In *Brunk*, the Court held unconstitutional an attempt to proceed within the judicial system via *quo warranto* to remove a statewide official when the sole power of impeachment was delegated by the Constitution to the House and Senate, respectively. The Court further held that the suspension provisions of the statute might be manipulated to authorize "an indefinite suspension, which, in effect, would be a removal and for that reason would be void." 34 S.W.2d at 98.[2] In this regard, Ms. Moriarty is correct. *Brunk* is clear authority that *quo warranto* will not lie to oust or suspend respondent, nor any other statewide officeholder subject to impeachment under the Constitution. Neither may section 106.050 be read to automatically pro-

1. The language of our Constitution is different and more specific than the constitutional language addressed in *State ex rel. DeConcini v. Sullivan*, 66 Ariz. 348, 188 P.2d 592 (1948). While our result is different than in *DeConcini*, the method of our analysis is not different. As was stated in *Holmes v. Osborn*, 57 Ariz. 522, 537, 115 P.2d 775, 782 (1941), "Whether the process of impeachment is exclusive depends upon the fundamental laws, and these laws are so different that the decisions under them lend very little aid in reaching a conclusion under ours." *Robison v. First Judicial District Court*, 73 Nev. 169, 313 P.2d 436, 439 (1957).

2. The fear of indefinite impeachment hearings is not mere speculation. Eleven articles of impeachment were filed against Andrew Johnson during the 1868 impeachment proceedings against him. After acquitting the president on three of the eleven articles, a formal vote was never taken on the remaining eight articles of impeachment. William Rehnquist, *Grand Inquests* (1992).

vide for an indefinite suspension. Such a construction of the statute would be an unconstitutional alternative to impeachment.

### III.

■ This does not mean, however, that the Court on its own is powerless to consider section 106.050 as authority for a temporary suspension of Ms. Moriarty from office pending the trial of her impeachment. *Brunk* also stated that the power to remove necessarily includes the "minor power to suspend". 34 S.W.2d at 98. In the modern constitutional scheme, the decision to impeach is vested in the House of Representatives with the trial of the impeachment vested in the Supreme Court. This separation of powers between these two separate branches of government substantially removes the likelihood that any suspension pending the impeachment trial would be so indefinite as to render the statute unconstitutional on its face as an alternative to impeachment.[3]

While other constitutional challenges to this statute might be raised, it would be improper to anticipate or rule upon those potential challenges in this matter. Here, the offense alleged went to a claim of misconduct regarding the core responsibilities of the office of the Secretary of State, certification of a candidate for public office. Here, also, a general election was scheduled to occur prior to the trial of impeachment. The charges cast doubt as to the ability of Ms. Moriarty to properly carry out her supervisory responsibilities. There was no possibility of clearing away that doubt until after Ms. Moriarty's impeachment trial was completed. This was a matter of such unique importance and sensitivity that suspension pending trial was required to uphold the sanctity of our election process.

Because the power of trial of impeachment is relegated solely to this Court by the Constitution, the included power of suspension is also a matter solely within the power of this Court. Only within this context can section 106.060 be constitutionally construed. It cannot be construed to operate automatically without an independent analysis by this Court as to whether the particular facts of the case require temporary suspension. Section 106.060 may exist only as an aid and not as an alternative to this Court's power to conduct the trial of impeachment.

### IV.

■ One further matter remains: Is the suspension provided by section 106.050 with or without the emoluments of office, including salary? The statute answers this question by implication. Section 106.050 provides only that the impeached state officeholder "is hereby suspended from exercising his office". It provides for no further remedy. This is consistent with the statute's purpose of protecting the integrity of the exercise of statewide office pending the final adjudication of impeachment. It is not the purpose of section 106.050 to punish a statewide officeholder who has been charged with, but not yet found guilty of, an impeachable offense.

### V.

For these reasons, we *sua sponte* treated the Attorney General's request for an order *quo warranto* as a request to exercise our authority granted under the impeachment provisions of the Missouri Constitution and section 106.050 to suspend Judith K. Moriarty from exercising the duties of her office pending the trial of her impeachment and we entered our order of mandamus granting that relief while leaving all other emoluments of office, including salary, in effect.

All concur.

---

3. *See* note 2, *supra*.