In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

KARLA L. ALLSBERRY, ) No. ED109468
 ) ED109481 (consolidated with above)
 Respondent/Cross-Appellant, )
 ) Appeal from the Circuit Court
 ) of Lincoln County
 vs. ) Cause No. 20L6-CC00031
 )
PATRICK S. FLYNN, )
 in his individual capacity, ) Honorable Richard G. Callahan
 )
 Appellant/Cross-Respondent. ) Filed: August 10, 2021

 OPINION

 I. Introduction

 The Honorable Patrick S. Flynn appeals the judgment declaring that he did not have

authority, as the presiding judge of the 45th Judicial Circuit, to suspend Karla Allsberry, the

elected circuit clerk of Lincoln County within the 45th Judicial Circuit. Allsberry cross-appeals

the judgment denying her request for injunctive relief. We would affirm the declaratory

judgment, reverse the denial of injunctive relief and enter the injunction the trial court should

 1
have imposed. But due to the general interest in and importance of the issues in this case, we

transfer it to the Missouri Supreme Court under Rule 83.02.1

 II. Procedural and Factual Background

 Both Judge Flynn and Allsberry were elected to their respective positions in the 2018

general election and took office in January of 2019. Intense conflict between the two began

immediately and escalated over the weeks and months. There was considerable evidence at trial

about the parties’ acrimonious power struggle, the rift this discord created among the staff at the

Lincoln County courthouse, and the disruption their dysfunctional professional relationship

caused--the details of which are largely irrelevant to the legal questions presented in this appeal.

The following are the facts salient to our disposition.

 After several problem-filled months, Judge Flynn issued Allsberry the following letter in

May of 2019:

 The purpose of this letter is to inform you that pursuant to Section 478.240 RSMo.,
 as Presiding Judge, I am temporarily placing you on administrative leave and
 suspending your access to the Justice Center, its employees and the records of the
 court. This action is necessary due to your conduct creating a dysfunctional work
 environment for the Lincoln County Circuit Court in your failure to operate in fact,
 truth, protocol and respect. This action will remain in effect for an indefinite period
 of time until I notify you otherwise. This administrative suspension will cease in
 the event you voluntarily resign from office at any time.

 This administrative suspension is not a cause of action and will not cause any loss
 of pay or benefits for you during the period of suspension. If any action is imposed
 for any reason, you will be notified of the reasons at that time along with your due
 process rights in accordance with section 483.170, RSMo.

 During this period of administrative leave and suspension of your duties you are
 not [] permitted to enter the Justice Center2 or represent this office in your official
 capacity at any time. However, you will be expected to remain available if called
 upon to return to work or meet with the Presiding Judge or anyone involved in
 bringing this to a resolution.

1
 All rule references are to Missouri Supreme Court Rules (2021).
2
 Later, Judge Flynn clarified that Allsberry was not restricted from accessing the public areas of the courthouse,
only the “clerk’s office and judicial hallways.”

 2
Section 478.240--invoked by Judge Flynn in this letter--states in relevant part that “the presiding

judge of the circuit shall have general administrative authority over all judicial personnel and

court officials in the circuit.” § 478.240.2.3

 Also referenced in the letter is § 483.170, which, along with related sections of Chapter

483, addresses the removal from office of an elected circuit clerk who has been found guilty of a

misdemeanor in office and the clerk’s suspension pending trial on such charges. During the

summer of 2019, Judge Flynn notified the prosecuting attorney and the Attorney General that he

believed Allsberry had committed a misdemeanor in office. Investigations into his numerous

allegations of misconduct were conducted by the relevant authorities. No actual charge of

misdemeanor in office has ever been filed against Allsberry by any prosecutor or the Attorney

General.

 Judge Flynn’s suspension of Allsberry has been kept in effect continuously since May of

2019; at this point, she has been suspended for over two years of her four-year term of office. In

March of 2020, she filed a petition seeking a declaration that Judge Flynn was not authorized

under any of the cited statutory provisions to place her on indefinite administrative leave and bar

her from performing her duties as circuit clerk or entering the courthouse.4 She also sought the

following injunctive relief: “restoring [Allsberry] to her office of elected Clerk of the Circuit

Court,” preventing Judge Flynn from barring her from the courthouse, “and ordering Judge

Flynn to remove her from indefinite administrative leave.”

3
 All statutory and constitutional references are to Mo. Rev. Stat. 2000.

4
 Allsberry had begun challenging her suspension immediately, seeking writs and filing a federal lawsuit asserting
that Judge Flynn’s actions violated her constitutional rights of free speech, association, and due process. That case
has been stayed pending resolution by a state court of an “unsettled issue of state law” that may impact the
adjudication of the federal questions, specifically “the interplay between Sections 478.240 and 483.170.” Allsberry
v. Flynn, 2019 WL 5295128, at *3 (E.D. Mo. Oct. 18, 2019). That ruling led to the filing of the present case.

 3
 The Honorable Richard G. Callahan, retired circuit judge for Cole County, was appointed

as a special judge by the Supreme Court to hear this case. Several days of testimony and

argument were presented, after which the trial court entered judgment declaring that § 478.240

“does not grant a presiding judge the authority to order the suspension of an elected Circuit Court

Clerk.” Even if it did, the trial court added, the presiding judge would need cause to suspend her

and a “cause requirement has not been met.” The trial court also declared that § 483.170, and the

suspension and removal procedures therein, were not applicable in this case because no formal

misdemeanor in office charges thereunder had been filed. Nevertheless, the trial court went on to

conclude that none of the misdemeanor in office allegations asserted by Judge Flynn against

Allsberry were “supported by proof.” Despite finding that her suspension was unauthorized, the

trial court denied Allsberry’s request for injunctive relief restoring her to her office on the

ground that it lacked the power “to mandate or enjoin what another circuit judge might do.”

 This appeal and cross-appeal follow.5

 III. Standard of Review

 The standard of review in this action for a declaratory judgment and injunctive relief is

the same as in any court-tried case: the judgment will be affirmed unless there is no substantial

evidence to support it, it is against the weight of the evidence, or it erroneously declares or

applies the law. Dohogne v. Counts, 307 S.W.3d 660, 665-66 (Mo. App. E.D. 2010). Both the

appeal and cross-appeal raise claims that the trial court erroneously declared and applied the law.

These claims are reviewed de novo. Adams v. Certain Underwriters at Lloyd’s of London, 589

5
 Allsberry filed two motions for leave to supplement the record on appeal with documents that were not filed in the
trial court, which are not properly included in a legal file. Rule 81.12(b)(1)(C) (stating that legal file may include
“[p]leadings and other portions of the trial record”). Incidentally, none of the documents are material to the
questions presented on appeal and should be omitted from the legal file for that reason as well. See Rule
81.12(b)(1)(D). Both motions are denied.

 4
S.W.3d 15, 26 (Mo. App. E.D. 2019). To the extent our review involves the interpretation of

statutes and constitutional provisions, we construe the words used in those provisions according

to their plain and ordinary meaning. StopAquila.org v. City of Peculiar, 208 S.W.3d 895, 902

(Mo. banc 2006).

 IV. Discussion

 There are two legal questions before this Court. First, whether Judge Flynn had the power

under his general administrative authority as the presiding judge to suspend Allsberry, an elected

circuit clerk, when the suspension was indefinite and had the effect of removing her from office.

We conclude that he did not. The second question is whether the trial court had the power to

grant Allsberry injunctive relief so as to undo the wrong done by Judge Flynn. We conclude that

it did.

 Presiding Judge’s Authority

 In his point on appeal from the declaratory judgment, Judge Flynn contends that the trial

court erroneously declared and applied the law by holding that he did not have authority under §

478.240.2 to suspend Allsberry. He argues the general administrative authority vested in him

pursuant to that statute is broad and necessarily includes the power to suspend disruptive

personnel, even the elected circuit clerk. Judge Flynn concedes, however, that § 478.240 does

not grant the presiding judge the power to remove an elected circuit clerk. He and Allsberry

agree that an elected circuit clerk can only be removed from her elected position for a

misdemeanor in office or by way of a quo warranto proceeding. Allsberry argues that because

Judge Flynn suspended her indefinitely and has continuously prevented her from acting in her

official capacity, he has effectively removed her from office. Judge Flynn disagrees, claiming that

 5
because the suspension was with pay and benefits, did not divest Allsberry of her title, and did

not create a vacancy of the office to be filled by the governor, it was not a removal.

 For the following reasons, we conclude that, however broad the presiding judge’s general

administrative authority is and whatever other administrative actions he might be empowered to

take with respect to an elected circuit clerk, the presiding judge is not authorized to take any

action that has the practical effect of removing an elected circuit clerk from office.

 General Administrative Authority

 Article V, section 15.3 of the Missouri Constitution states that “[t]he presiding judge

shall have general administrative authority over the court and its divisions.” Mo. Const. art. V, §

15.3 (amendment adopted at special election August 3, 1976). Section 478.240 similarly vests

presiding judges with this general administrative authority:

 Subject to the authority of the supreme court and the chief justice under Article V
 of the Constitution, the presiding judge of the circuit shall have general
 administrative authority over all judicial personnel and court officials in the
 circuit, including the authority to assign any judicial or court personnel anywhere
 in the circuit, and shall have the authority to assign judges to hear such cases or
 classes of cases as the presiding judge may designate, and to assign judges to
 divisions. Such assignment authority shall include the authority to authorize
 particular associate circuit judges to hear and determine cases or classes of cases.

§ 478.240.2 (emphasis added). As Allsberry points out, the statute does not expressly state that

this authority extends over the circuit clerk. But the terms “judicial personnel” and “court

official” plainly encompass all the people who are employed by the court or act in an official

capacity for the court, including the elected circuit clerk.

 The Supreme Court of Missouri has described the presiding judge’s authority under the

above provisions as “administrative control” over “the business of the circuit judges” and “the

entire court, including the divisions.” Gregory v. Corrigan, 685 S.W.2d 840, 842 (Mo. banc

1985). This general administrative authority has also been described as “the power to exercise

 6
strong leadership in a fair and just manner” and “to administer and run the court or courts.” In re

Rules of Circuit Court for Twenty-First Judicial Circuit, 702 S.W.2d 457, 457-58 (Mo. banc

1985). Our courts have, on occasion, addressed whether a particular action is a permissible

exercise of a presiding judge’s general administrative authority, but none of those cases are

analogous to the facts of this case. See, e.g., Heinen v. Healthline Management, Inc., 982 S.W.2d

244, 247 (Mo. banc 1998) (holding the authority includes closing the court when necessary);

State ex rel. Twenty-Second Judicial Circuit v. Jones, 823 S.W.2d 471, 475 (Mo. banc 1992)

(holding the authority includes enforcing the budget); State v. Nunley, 923 S.W.2d 911, 917 (Mo.

banc 1996) (holding the authority does not include disqualifying other judges from hearing a

certain case); State ex rel. Tate v. Turner, 789 S.W.2d 240, 241 (Mo. App. S.D. 1990) (holding

the authority does not include transferring library funds for another use).

 As Judge Flynn admits, this general administrative authority does not empower the

presiding judge to remove an elected circuit clerk from office. As an elected official who is not

subject to impeachment, Allsberry is only subject to removal from office “in the manner and for

the causes provided by law.” Mo. Const. art. VII, § 4. There are two means of removing an

elected circuit clerk provided by law: (1) being found guilty of a misdemeanor in office, see §§

483.165 to 483.205,6 and (2) a “judgment of ouster” via quo warranto proceedings, see §§

6
 A “misdemeanor in office” is defined as “knowingly and willfully” committing an “act contrary to the duties of his
office” or failing to perform an “act or duty required of him by law.” § 483.165. If a court believes the circuit clerk
has committed a misdemeanor in office, the court shall notify the attorney general or prosecuting attorney, “stating
the charge” and “requiring him to prosecute the same.” § 483.170.1. At that time, “such court may by order of
record suspend such clerk from office until a trial upon such charge or charges can be had.” Id. The circuit clerk can
avoid such suspension by providing a bond. § 483.170.3. The statute also provides for the clerk to be given notice of
the charges and for the charges to be prosecuted with “all convenient speed” at a jury or bench trial. See §§ 483.175,
483.180, 483.190. A clerk found guilty of a misdemeanor in office “shall be removed from his office”; if the clerk is
acquitted, then he or she is to be reinstated to the office. § 483.195; § 483.200.

 7
531.010 to 531.060.7 Removal from office for other causes and in other manners not provided by

law are not constitutionally permissible. Section 478.240 does not provide a manner and cause

for removing an elected officeholder. Thus, removal of an elected circuit clerk is not a

permissible exercise of a presiding judge’s general administrative authority under that statute.

 Nevertheless, it may very well be that a presiding judge could take some kind of

administrative action short of removal against an elected circuit clerk. Because we conclude that

Allsberry’s suspension was in effect a removal, we need not actually decide whether, or under

what other circumstances, a suspension might be a permissible exercise of a presiding judge’s

general administrative authority. Here, the suspension was a de facto removal and, therefore, was

not authorized.

 De Facto Removal

 Allsberry’s suspension bars her from accessing her physical office and acting in her

“official capacity at any time.” Although she might maintain her title of circuit clerk, it is in

name only because she is prohibited from carrying out any of the duties associated with that title.

Although she might be receiving her pay and benefits, sitting at home collecting a paycheck--

while an interim clerk appointed by Judge Flynn does her job--is not in any way what Allsberry

was elected to do: serve as the circuit clerk. Although her position is not technically “vacant”

triggering appointment of a new clerk by the governor, she has literally and figuratively been

forced to vacate her office. Moreover, the suspension has no conceivable end: it continues until

Judge Flynn decides otherwise or Allsberry resigns. And it is not clear from the record what, if

anything, would cause Judge Flynn to decide to lift the suspension. Cf. In re Voorhees, 739

7
 An officeholder may be removed upon being “adjudged guilty of any usurpation of, or intrusion into, or unlawfully
holding and executing” the office. § 531.050; see also State ex inf. McCulloch v. Edwards, 337 S.W.3d 118, 122
(Mo. App. E.D. 2011) (holding that quo warranto may be used to “oust an office holder for misconduct,
malfeasance, or other cause”).

 8
S.W.2d 178, 186 (Mo. banc 1987) (holding that order relieving associate circuit judges of their

assignments for failing to comply with court reorganization plan did not “strip the associates of

their offices” because evidence showed order would be lifted as to any associate who gave

assurances he would perform duties as assigned under the plan). Allsberry has not merely been

relieved of her duties until such time as she complies with Judge Flynn’s wishes; she has been

stripped entirely of her ability to do anything in service of her office.

 Under these circumstances, Allsberry’s suspension was a de facto removal. To hold

otherwise would put form over substance. Any construction of the presiding judge’s “general

administrative authority” under § 478.240.2 that would allow him or her to suspend the elected

circuit clerk for as long as and for whatever reasons the judge wishes would circumvent the

constitutional methods for removing an elected circuit clerk. This is an untenable result. In State

ex inf. Nixon v. Moriarty, the Supreme Court of Missouri held that a statute permitting temporary

suspension of an impeachable officeholder pending acquittal after a trial could not be construed

to allow an automatic suspension via quo warranto proceedings upon the mere filing of articles

of impeachment. 893 S.W.2d 806, 808 (Mo. banc 1995). Given the real possibility of indefinite

impeachment hearings, such a suspension could be indefinite and thus, in effect, a removal. Id. at

808 n.2. Automatic indefinite suspension, the Court said, would be an “unconstitutional

alternative” to the impeachment process. Id. at 809. Similarly here, indefinite suspension of the

elected circuit clerk’s ability to conduct any of her duties, subject only to the caprices of the

presiding judge, would be an unconstitutional alternative to removal under article VII, section 4.

 In sum, the trial court did not err in concluding that Judge Flynn had no authority to take

the action he did against Allsberry.

 9
 Injunctive Relief

 In her point on cross-appeal from the judgment denying her claim for injunctive relief,

Allsberry contends the trial court erred in concluding that one circuit judge cannot order

injunctive relief against another circuit judge. We agree.

 The trial court did not explain this conclusion in the judgment, except to say that

Allsberry failed to provide any “authority for the proposition” that one circuit judge has the

power to enjoin another circuit judge. The trial court’s conclusion does not appear to be based on

a belief that Judge Flynn was protected by judicial immunity, nor could it be. As Allsberry points

out and Judge Flynn admitted in the trial court, the act of suspending her was done in his

administrative capacity; it was not a judicial or an adjudicative decision triggering judicial

immunity. See generally Forrester v. White, 484 U.S. 219, 229-30 (1988) (finding that judge’s

decision to demote and discharge employee was done in administrative capacity and, while

important to a “sound adjudicative system,” was not itself “judicial or adjudicative” and did not

give rise to absolute immunity from liability in a discrimination case); see also Bugg v. Rutter,

466 S.W.3d 596, 603 (Mo. App. W.D. 2015) (holding that absolute judicial immunity attaches to

particular judicial functions, not to particular offices). Judicial immunity does not explain the

trial court’s conclusion that it lacked authority to impose injunctive relief against Judge Flynn.

 This conclusion is also not supportable on the theory that Judge Flynn was a judge at the

same trial court level as Judge Callahan, the special judge assigned to this case, though it is clear

from the record that Judge Callahan was concerned that perhaps the presiding judge’s actions

should be reviewed in the first instance by a superior court. Ultimately, Judge Callahan relied on

a footnote in Gregory v. Corrigan, discussed below, to conclude that he did in fact have

jurisdiction to enter a declaratory judgment in this case. Arguably, that footnote also supports the

 10
proposition that Judge Callahan had the power to enter injunctive relief as to Judge Flynn’s

actions.

 In Gregory, the associate circuit judges in St. Louis County filed an action against some

of the circuit judges seeking a declaration that two local rules promulgated by the circuit judges

were invalid and an injunction to prevent enforcement of those rules. 685 S.W.2d at 841. The

special judge appointed to that case was also a circuit judge from another county and he granted

the relief as requested, declaring the local rules invalid and entering a temporary injunction. Id.

On appeal to the Supreme Court of Missouri, the circuit judges argued that the trial court did not

have jurisdiction and the associate circuit judges should have sought direct review of their

actions in the Supreme Court. Id. The Court recognized that “it would be better that future

disputes of this sort be presented in the first instance to the Supreme Court and this Court may

consider them administratively under its supervisory powers.” Id. at 842. But in a footnote the

Court pointed out that its preference for that procedure “is not intended to impinge upon or

preclude the application of regular judicial processes in matters of this kind.” Id. at 842 n.3. In

this way, the Supreme Court signaled its approval of the “regular judicial process” used in that

case, which included seeking injunctive relief as to circuit judges’ actions in a circuit court

presided over by another circuit judge.

 Based on the above--and discerning no reason to decide otherwise--we conclude that the

trial court’s authority in this case was no different than in any other case in which a plaintiff

seeks a declaration of rights and injunctive relief against a defendant. Circuit courts have the

judicial power to grant relief as it is required. State ex rel. Leonardi v. Sherry, 137 S.W.3d 462,

472 (Mo. banc 2004); see also Mo. Const. art. V, § 1. Courts are constitutionally required to be

“open and afford a remedy” for actionable wrongs. De May v. Liberty Foundry Co., 37 S.W.2d

 11
640, 645 (1931) (internal quotation marks and citation omitted); see also Mo. Const. art. I, § 14.

Circuit courts are specifically authorized by statute to issue injunctions, see generally § 526.010,

et seq., including injunctions “to compel the undoing of something wrongfully done.” American

Civil Liberties Union of Missouri v. Ashcroft, 577 S.W.3d 881, 898 (Mo. App. W.D. 2019)

(internal quotation marks and citation omitted). Having declared that Judge Flynn did not have

authority to indefinitely suspend Allsberry pursuant to his general administrative authority as the

presiding judge, Allsberry was also entitled to enforce that declaration by way of a permanent

mandatory injunction. See id. at 899. The declaratory judgment declared the wrong, but it did not

guarantee that the wrong would be undone:

 “A ‘declaratory judgment’ declares the rights of the parties or expresses the opinion
 of the court on a question of law without ordering anything to be done.” A
 declaratory judgment is distinguishable from other actions because it does not “seek
 execution or performance from the opposing party.”

Franks v. Hubbard, 498 S.W.3d 862, 873 (Mo. App. E.D. 2016) (quoting 26 C.J.S. Declaratory

Judgments § 1) (emphasis in Franks).

 In sum, the trial court erred in concluding that it had no power to order injunctive relief

solely because the defendant was another circuit judge.

 V. Conclusion

 We would affirm the judgment declaring that § 478.240.2 does not give the presiding

judge authority to indefinitely suspend the elected circuit clerk. We would reverse the judgment

denying Allsberry’s request for injunctive relief and exercise our authority under Rule 84.14 to

enter the injunction the trial court should have imposed instead of remanding, in the interest of

time and to dispose finally of this case. See ACLU, 577 S.W.3d at 899-90. But because of the

general interest in and importance of the questions in this case, we exercise our discretion to

 12
transfer this case to the Supreme Court pursuant to Rule 83.02.8 The resolution of issues relating

to the authority of one independently-elected court official over another is an important matter

and of general interest throughout this State, particularly to the electorate and the judiciary.

 The case is ordered transferred to the Supreme Court of Missouri.

 _______________________________
 Colleen Dolan, J.

Philip M. Hess, P. J., concurs.
Kurt S. Odenwald, J., concurs.

8
 Although the Supreme Court denied an application for transfer prior to disposition under Rule 83.01, there is
nothing in the rules that suggests such a denial precludes this Court from ordering transfer upon disposition under
Rule 83.02.

While expediency is not a stated ground for this Court to transfer, we find it an appropriate consideration in this
case. Allsberry has succeeded in her legal challenge to the suspension that has prevented her from serving over two
years of her term already and there are less than two years left in that term. As a practical matter, transferring the
case ourselves puts the case before the Supreme Court months sooner than would the application for transfer
process. See Rule 83.02 (stating motion for transfer filed in this Court is due fifteen days after an opinion) and Rule
83.04 (stating motion to transfer filed in Supreme Court is due fifteen days after this Court denies a motion under
Rule 83.02).

 13