

# SUPREME COURT OF MISSOURI
## en banc

KARLA K. ALLSBERRY,        )    *Opinion issued September 14, 2021*
                                    )
        Respondent/Cross-Appellant,  )
                                    )
v.                                )    No. SC99257
                                    )
PATRICK S. FLYNN,          )
      in his individual capacity,    )
                                    )
        Appellant/Cross-Respondent.  )

## APPEAL FROM THE CIRCUIT COURT OF LINCOLN COUNTY
The Honorable Richard G. Callahan, Judge

PER CURIAM

### I.      Introduction[1]

The Honorable Patrick S. Flynn appeals the judgment declaring that he did not have authority, as the presiding judge of the 45th Judicial Circuit, to suspend Karla Allsberry, the elected circuit clerk of Lincoln County within the 45th Judicial Circuit. Allsberry cross-appeals the judgment denying her request for injunctive relief. This Court affirms the declaratory judgment, reverses the denial of injunctive relief, and remands the case to the circuit court to enter the requested injunctive relief.

---

[1] This Court adopts substantial portions of the decision authored by the Honorable Colleen Dolan of the Missouri Court of Appeals, Eastern District, on August 10, 2021, without further attribution.

## II. Procedural and Factual Background

Both Judge Flynn and Allsberry were elected to their respective positions in the 2018 general election and took office in January 2019. Intense conflict between the two began immediately and escalated over the weeks and months. There was considerable evidence at trial about the parties' acrimonious power struggle, the rift this discord created among the staff at the Lincoln County courthouse, and the disruption their dysfunctional professional relationship caused – the details of which are largely irrelevant to the legal questions presented in this appeal. The following are the facts salient to this Court's disposition.

After several problem-filled months, Judge Flynn issued Allsberry the following letter in May 2019:

> The purpose of this letter is to inform you that pursuant to Section 478.240 RSMo., as Presiding Judge, I am temporarily placing you on administrative leave and suspending your access to the Justice Center, its employees and the records of the court. This action is necessary due to your conduct creating a dysfunctional work environment for the Lincoln County Circuit Court in your failure to operate in fact, truth, protocol and respect. This action will remain in effect for an indefinite period of time until I notify you otherwise. This administrative suspension will cease in the event you voluntarily resign from office at any time.
>
> This administrative suspension is not a cause of action and will not cause any loss of pay or benefits for you during the period of suspension. If any action is imposed for any reason, you will be notified of the reasons at that time along with your due process rights in accordance with section 483.170, RSMo.
>
> During this period of administrative leave and suspension of your duties you are not [] permitted to enter the Justice Center[2] or represent this office in your official capacity at any time. However, you will be expected to remain available if called upon to return to work or meet with the Presiding Judge or

[2] Later, Judge Flynn clarified that Allsberry was not restricted from accessing the public areas of the courthouse, only the "clerk's office and judicial hallways."

anyone involved in bringing this to a resolution.

Section 478.240 – invoked by Judge Flynn in this letter – states, in relevant part, that "the presiding judge of the circuit shall have general administrative authority over all judicial personnel and court officials in the circuit." § 478.240.2.[3]

Also referenced in the letter is section 483.170, which, along with related sections of chapter 483, addresses the removal from office of an elected circuit clerk who has been found guilty of a misdemeanor in office and the clerk's suspension pending trial on such charges. During the summer of 2019, Judge Flynn notified the prosecuting attorney and the attorney general that he believed Allsberry had committed a misdemeanor in office. Investigations into his numerous allegations of misconduct were conducted by the relevant authorities. No actual charge of misdemeanor in office ever has been filed against Allsberry by any prosecutor or the attorney general.

Judge Flynn's suspension of Allsberry has been kept in effect continuously since May 2019; at this point, she has been suspended more than half of her four-year term in office. In March 2020, she filed a petition seeking a declaration that Judge Flynn was not authorized under any of the cited statutory provisions to place her on indefinite administrative leave and bar her from performing her duties as circuit clerk or entering the courthouse.[4] She also sought the following injunctive relief: "restoring [Allsberry] to her

---

[3] All statutory references are to RSMo 2016 unless otherwise noted.

[4] Allsberry began challenging her suspension immediately, seeking writs and filing a federal lawsuit asserting Judge Flynn's actions violated her constitutional rights of free speech, association, and due process. That case has been stayed pending resolution by a state court of an "unsettled issue of state law" that may impact the adjudication of the federal questions, specifically "the interplay between Sections 478.240 and 483.170." *Allsberry v. Flynn*, 4:19-cv-02366-SNLJ, 2019 WL 5295128, at *3 (E.D. Mo. Oct. 18, 2019). That ruling led to the filing of the present case.

office of elected Clerk of the Circuit Court," preventing Judge Flynn from barring her from the courthouse, "and ordering Judge Flynn to remove her from indefinite administrative leave."

This Court appointed the Honorable Richard G. Callahan, retired circuit judge, as a special judge. Several days of testimony and argument were presented, after which the circuit court entered judgment declaring that section 478.240 "does not grant a presiding judge the authority to order the suspension of an elected Circuit Court Clerk." Even if it did, the circuit court added, the presiding judge would need cause to suspend her and a "cause requirement has not been met." The circuit court also declared that section 483.170, and the suspension and removal procedures therein, did not apply in this case because no formal misdemeanor-in-office charges had been filed. Nevertheless, the circuit court went on to conclude that none of the misdemeanor-in-office allegations asserted by Judge Flynn against Allsberry were "supported by proof." Despite finding that her suspension was unauthorized, the circuit court denied Allsberry's request for injunctive relief restoring her to her office on the ground that it lacked the power "to mandate or enjoin what another circuit judge might do."

Judge Flynn appealed. Allsberry cross-appealed. The case was transferred to this Court following an opinion by the court of appeals pursuant to Rule 83.02.

### III.    Standard of Review

The standard of review in this action for a declaratory judgment and injunctive relief is the same as in any court-tried case: the judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously

4

declares or applies the law. *Dohogne v. Counts*, 307 S.W.3d 660, 665-66 (Mo. App. 2010). Both the appeal and cross-appeal raise claims that the circuit court erroneously declared and applied the law. These claims are reviewed *de novo. Adams v. Certain Underwriters at Lloyd's of London*, 589 S.W.3d 15, 26 (Mo. App. 2019). To the extent this Court's review involves the interpretation of statutes and constitutional provisions, the Court construes the words used in those provisions according to their plain and ordinary meaning. *StopAquila.org v. City of Peculiar*, 208 S.W.3d 895, 902 (Mo. banc 2006).

## IV.    Discussion

There are two legal questions before this Court: (1) whether Judge Flynn had the power under his general administrative authority as the presiding judge to suspend Allsberry, an elected circuit clerk, when the suspension was indefinite and had the effect of removing her from office; and (2) whether the circuit court had the power to grant Allsberry injunctive relief so as to undo any wrong done by Judge Flynn.

### Presiding Judge's Authority

Judge Flynn contends that the circuit court erroneously declared and applied the law by holding that he did not have authority under section 478.240.2 to suspend Allsberry. He argues the general administrative authority vested in him pursuant to that statute is broad and necessarily includes the power to suspend disruptive personnel, even the elected circuit clerk. Judge Flynn concedes, however, that section 478.240 does not grant the presiding judge the power to *remove* an elected circuit clerk. He and Allsberry agree that an elected circuit clerk can be removed from her elected position only for a misdemeanor in office or by way of a *quo warranto* proceeding. Allsberry argues that,

5

because Judge Flynn suspended her indefinitely and has continuously prevented her from acting in her official capacity, he has *effectively removed* her from office. Judge Flynn disagrees, claiming it was not a removal because the suspension with pay and benefits does not divest Allsberry of her title and does not create a vacancy of the office to be filled by the governor.

For the following reasons, however broad the presiding judge's general administrative authority is and whatever other administrative actions he might be empowered to take with respect to an elected circuit clerk, the presiding judge is not authorized to take any action that has the practical effect of removing an elected circuit clerk from office.

### *General Administrative Authority*

Article V, section 15.3 of the Missouri Constitution states: "The presiding judge shall have general administrative authority over the court and its divisions." Section 478.240 similarly vests presiding judges with this general administrative authority:

> Subject to the authority of the supreme court and the chief justice under Article V of the Constitution, *the presiding judge of the circuit shall have general administrative authority over all judicial personnel and court officials in the circuit,* including the authority to assign any judicial or court personnel anywhere in the circuit, and shall have the authority to assign judges to hear such cases or classes of cases as the presiding judge may designate, and to assign judges to divisions. Such assignment authority shall include the authority to authorize particular associate circuit judges to hear and determine cases or classes of cases.

(Emphasis added). As Allsberry points out, the statute does not expressly state that this authority extends over the circuit clerk. But the terms "judicial personnel" and "court official" plainly encompass all the people who are employed by the court or act in an

6

official capacity for the court, including the elected circuit clerk.

This Court has described the presiding judge's authority under the above provisions as "administrative control" over "the business of the circuit judges" and "the entire court, including the divisions." *Gregory v. Corrigan*, 685 S.W.2d 840, 842 (Mo. banc 1985). This general administrative authority has also been described as "the power to exercise strong leadership in a fair and just manner" and "to administer and run the court or courts." *In re Rules of Cir. Ct. for 21st Jud. Cir.*, 702 S.W.2d 457, 458 (Mo. banc 1985). Missouri courts have, on occasion, addressed whether a particular action is a permissible exercise of a presiding judge's general administrative authority, but none of those cases are analogous to the facts of this case. *See, e.g., Heinen v. Healthline Mgmt., Inc.*, 982 S.W.2d 244, 247 (Mo. banc 1998) (holding the authority includes closing the court when necessary); *State ex rel. 22d Jud. Cir. v. Jones*, 823 S.W.2d 471, 475 (Mo. banc 1992) (holding the authority includes enforcing the budget); *State v. Nunley*, 923 S.W.2d 911, 917 (Mo. banc 1996) (holding the authority does not include disqualifying other judges from hearing a certain case); *State ex rel. Tate v. Turner,* 789 S.W.2d 240, 241 (Mo. App. 1990) (holding the authority does not include transferring library funds for another use).

As Judge Flynn admits, this general administrative authority does *not* empower the presiding judge to remove an elected circuit clerk from office. As an elected official who is not subject to impeachment, Allsberry is subject to removal from office only "in the manner and for the causes provided by law." Mo. Const. art. VII, § 4. There are two means of removing an elected circuit clerk provided by law: (1) being found guilty of a

misdemeanor in office, *see* §§ 483.165-.205,[5] and (2) a "judgment of ouster" via *quo warranto* proceedings, *see* §§ 531.010-.060.[6] Removal from office for other causes and in other manners not provided by law is not constitutionally permissible. Section 478.240 does not provide a manner and cause for removing an elected officeholder. Thus, removal of an elected circuit clerk is not a permissible exercise of a presiding judge's general administrative authority under that statute.

Nevertheless, it may very well be that a presiding judge could take some kind of administrative action *short of removal* against an elected circuit clerk. Because Allsberry's suspension was *in effect* a removal, this Court need not actually decide whether, or under what other circumstances, a suspension might be a permissible exercise of a presiding judge's general administrative authority. Here, the suspension was a *de facto* removal and, therefore, was not authorized.

---

[5] A "misdemeanor in office" is defined as "knowingly and willfully" committing an "act contrary to the duties of his [or her] office" or failing to perform an "act or duty required of him [or her] by law." § 483.165. If a court believes the circuit clerk has committed a misdemeanor in office, the court shall notify the attorney general or prosecuting attorney, "stating the charge" and "requiring him [or her] to prosecute the same." § 483.170.1. At that time, "such court may by order of record suspend such clerk from office until a trial upon such charge or charges can be had." *Id*. The circuit clerk can avoid such suspension by providing a bond. § 483.170.3. The statute also provides for the clerk to be given notice of the charges and for the charges to be prosecuted with "all convenient speed" at a jury or bench trial. *See* §§ 483.175, 483.180, 483.190. A clerk found guilty of a misdemeanor in office "shall be removed from his [or her] office"; if the clerk is acquitted, then he or she is to be reinstated to the office. §§ 483.195, 483.200.

[6] An officeholder may be removed upon being "adjudged guilty of any usurpation of, or intrusion into, or unlawfully holding and executing" the office. § 531.050; *see also State ex inf. McCulloch v. Edwards*, 337 S.W.3d 118, 122 (Mo. App. 2011) (holding that *quo warranto* may be used to "oust an office holder for misconduct, malfeasance, or other cause").

### De Facto Removal

Allsberry's suspension bars her from accessing her physical office and acting in her "official capacity at any time." Although she might maintain her title of circuit clerk, it is in name only because she is prohibited from carrying out any of the duties associated with that title. Although she might be receiving her pay and benefits, sitting at home collecting a paycheck – while an interim clerk appointed by Judge Flynn does her job – is not in any way what Allsberry was elected to do: serve as the circuit clerk. Although her position is not technically "vacant" to trigger appointment of a new clerk by the governor, she literally and figuratively has been forced to vacate her office. Moreover, the suspension has no conceivable end: it continues until Judge Flynn decides otherwise or Allsberry resigns. And it is not clear from the record what, if anything, would cause Judge Flynn to decide to lift the suspension. *Cf. In re Voorhees*, 739 S.W.2d 178, 186 (Mo. banc 1987) (holding an order relieving associate circuit judges of their assignments for failing to comply with the court reorganization plan did *not* "strip the associates of their offices" because evidence showed the order would be lifted as to any associates who gave assurances they would perform their duties as assigned under the plan). Allsberry has not merely been relieved of her duties until such time as she complies with Judge Flynn's wishes; she has been stripped entirely of her ability to do anything in service of her office.

Under these circumstances, Allsberry's suspension was a *de facto* removal. To hold otherwise would put form over substance. Any construction of the presiding judge's "general administrative authority" under section 478.240.2 that would allow him or her to suspend the elected circuit clerk for as long as and for whatever reasons the judge wishes

would circumvent the constitutional methods for removing an elected circuit clerk. This is an untenable result. In *State ex inf. Nixon v. Moriarty*, this Court held that a statute permitting temporary suspension of an impeachable officeholder pending acquittal after a trial could not be construed to allow an automatic suspension via *quo warranto* proceedings upon the mere filing of articles of impeachment. 893 S.W.2d 806, 808 (Mo. banc 1995). Given the real possibility of indefinite impeachment hearings, such a suspension could be indefinite and, thus, in effect, a removal. *Id*. at 808 n.2. Automatic indefinite suspension, the Court said, would be an "unconstitutional alternative" to the impeachment process. *Id.* at 809. Similarly here, indefinite suspension of the elected circuit clerk's ability to conduct any of her duties, subject only to the caprices of the presiding judge, would be an unconstitutional alternative to removal under article VII, section 4.

In sum, the circuit court did not err in concluding that Judge Flynn had no authority to take the action he did against Allsberry.

## **Injunctive Relief**

On cross-appeal, Allsberry contends the circuit court erred in concluding that one circuit judge cannot order injunctive relief against another circuit judge. This Court agrees.

The circuit court did not explain this conclusion in the judgment, except to say that Allsberry failed to provide any "authority for the proposition" that one circuit judge has the power to enjoin another circuit judge. The circuit court's conclusion does not appear to be based on a belief that Judge Flynn was protected by judicial immunity, nor could it be. As Allsberry points out and Judge Flynn admitted in the circuit court, the act of

10

suspending her was done in his administrative capacity; it was not a judicial or an adjudicative decision triggering judicial immunity. *See generally Forrester v. White*, 484 U.S. 219, 229-30 (1988) (finding that a judge's decision to demote and discharge an employee was done in his administrative capacity and, while important to a "sound adjudicative system," was not itself "judicial or adjudicative" and did not give rise to absolute immunity from liability in a discrimination case); *see also Bugg v. Rutter*, 466 S.W.3d 596, 603 (Mo. App. 2015) (holding that absolute judicial immunity attaches to particular judicial functions, not to particular offices). Judicial immunity does not explain the circuit court's conclusion that it lacked authority to impose injunctive relief against Judge Flynn.

This conclusion is also not supportable on the theory that Judge Flynn was a judge at the same circuit court level as Judge Callahan, the special judge assigned to this case, though it is clear from the record that Judge Callahan was concerned that perhaps the presiding judge's actions should be reviewed in the first instance by a superior court. Ultimately, Judge Callahan relied on a footnote in *Gregory* to conclude that he did in fact have jurisdiction to enter a declaratory judgment in this case. Arguably, that footnote also supports the proposition that Judge Callahan had the power to enter injunctive relief as to Judge Flynn's actions.

In *Gregory*, the associate circuit judges in St. Louis County filed an action against some of the circuit judges seeking a declaration that two local rules promulgated by the circuit judges were invalid and an injunction to prevent enforcement of those rules. 685 S.W.2d at 841. The special judge appointed to that case was also a circuit judge from

11

another county, and he granted the relief as requested, declaring the local rules invalid and entering a temporary injunction. *Id.* On appeal, the circuit judges argued that the circuit court did not have jurisdiction and the associate circuit judges should have sought direct review of their actions in this Court. *Id.* The Court recognized that "it would be better that future disputes of this sort be presented in the first instance to the Supreme Court and this Court may consider them administratively under its supervisory powers." *Id.* at 842. But in a footnote the Court pointed out that its preference for that procedure "is not intended to impinge upon or preclude the application of regular judicial processes in matters of this kind." *Id.* at 842 n.3. In this way, this Court signaled its approval of the "regular judicial process" used in that case, which included seeking injunctive relief as to circuit judges' actions in a circuit court presided over by another circuit judge.

Based on the above – and discerning no reason to decide otherwise – this Court concludes that the circuit court's authority in this case was no different than in any other case in which a plaintiff seeks a declaration of rights and injunctive relief against a defendant. Circuit courts have the judicial power to grant relief as it is required. *State ex rel. Leonardi v. Sherry*, 137 S.W.3d 462, 472 (Mo. banc 2004); *see also* Mo. Const. art. V, § 1. Courts are constitutionally required to be "open and afford a remedy" for actionable wrongs. *De May v. Liberty Foundry Co.*, 37 S.W.2d 640, 645 (Mo. 1931); *see also* Mo. Const. art. I, § 14. Circuit courts are specifically authorized by statute to issue injunctions, *see generally* § 526.010, *et seq.*, including injunctions "to compel the undoing of something wrongfully done." *ACLU of Mo. v. Ashcroft*, 577 S.W.3d 881, 897 (Mo. App. 2019). Having declared that Judge Flynn did not have authority to suspend

12

Allsberry indefinitely pursuant to his general administrative authority as the presiding judge, Allsberry was also entitled to enforce that declaration by way of a permanent mandatory injunction. *See id*. at 899. The declaratory judgment declared the wrong, but it did not guarantee that the wrong would be undone:

> "A 'declaratory judgment' declares the rights of the parties or expresses the opinion of the court on a question of law *without ordering anything to be done*." A declaratory judgment is distinguishable from other actions because it does not "seek execution or performance from the opposing party."

*Franks v. Hubbard*, 498 S.W.3d 862, 873 (Mo. App. 2016) (*quoting* 26 C.J.S. *Declaratory Judgments* § 1).

In sum, the circuit court erred in concluding that it had no power to order injunctive relief solely because the defendant was another circuit judge.

## V.     Conclusion

The portion of the circuit court's judgment denying Allsberry's request for injunctive relief is reversed, and the cause is remanded to the circuit court to enter the requested injunctive relief. In all other respects, the circuit court's judgment is affirmed.

All concur.

13